**RED WING SHOE COMPANY,
INC., Plaintiff,**

v.

**HOCKERSON–HALBERSTADT,
INC., Defendant.**

Civil No. 4–96–838.

United States District Court,
D. Minnesota,
Fourth Division.

June 6, 1997.

Jeff Howard Eckland, William L. Roberts, Faegre & Benson, Minneapolis, MN, for plaintiff.

James Thomas Nikolai, Haugen & Nikolai, Minneapolis, MN, James E. Uschold, Uschold Law Office, New Orleans, LA, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion to dismiss or, in the alternative, to transfer venue, and on plaintiff's motion for preliminary injunction. Based on a review of the file, record and proceedings herein, the court grants defendant's motion to dismiss for lack of personal jurisdiction, and denies plaintiff's motion as moot.

## BACKGROUND

Plaintiff Red Wing Shoe Company, Inc. ("Red Wing") is a Minnesota corporation with its principal place of business in Red Wing, Minnesota. Red Wing manufactures and sells Vasque Outdoor Footwear, a line of hiking boots. Defendant Hockerson–Halberstadt, Inc. ("HHI") is a Louisiana corporation with its principal place of business in Albuquerque, New Mexico. HHI has a registered office in New Orleans, Louisiana.

The patent at issue in this litigation is United States Patent Number 4,322,895 and Reexamination Certificate Number 4,322,895 ("the '895 patent"). The patent was issued in 1982, and the certificate was issued in 1995. Stan Hockerson ("Hockerson") was named as the inventor. The '896 patent is for a "stabilized athletic shoe," described in the patent abstract as "an athletic shoe having an upper with a counter forming a heel cup carried above a sole having an outsole, mid–sole and heel wedge. A support band is formed integral about the upper rim of the mid–sole and is secured about the sidewalls of the heel cup for supporting and stabilizing the heel cup relative to the sole when the shoe contacts the running surface."

HHI is a corporation formed by Hockerson and John Halberstadt ("Halberstadt"), the named inventor of United States Patent Number 4,259,792 (which is not at issue in this case). In 1991, Hockerson and Halberstadt assigned their respective interests in the patents to the corporation, which was formed to assert rights under the patent. Hockerson and Halberstadt are the officers and sole shareholders of HHI. HHI's business activities consist of "negotiating licenses under the patents and if necessary, to initi-

ate litigation against infringers." Declaration of Hockerson at ¶ 2. HHI has negotiated licensing/settlement agreements which permit approximately thirty companies to manufacture, use, and sell footwear products incorporating the invention of the '896 patent.

On October 25, 1995, counsel for HHI sent a letter to Vasque Outdoor Footwear in Red Wing, Minnesota, stating:

> We are contacting you to advise you that your company is manufacturing, using, and/or selling products which infringe the Hockerson patent. The following are examples of models where we believe this is the case: World Walkers—Fleetwood I & II,—Traveler I & II, Pathfinder, Escape, Clarion—Low, —GTX 7650, 7665, 7652, 7647, 7651, 7657, —Impact 7686, 7690, 7682, 7698, 7696, 7684, 7683, 7685, 7699, 7697, 7695. HHI realizes you may not have been aware of the Hockerson patent and/or the completion of the reexamination. Therefore with regard to infringing products, we would like to present a proposal to handle the situation in a fair, equitable manner, as amicably as is possible under the circumstances. Accordingly, a non-exclusive license is offered which will permit manufacture, sale, and use of footwear incorporating the patented invention. Of course, in the alternative, you may elect to cease further manufacture, use and/or sale of infringing products.

> To date, settlements/licenses have been negotiated with numerous companies. Other negotiations are ongoing.

> The license being offered will cover past and future manufacture, sale and use. Please be assured that the consideration will be realistic, fair and reasonable, with the overall amount being negotiable, based on the extent of allegedly infringing activities and other factors. (In this regard it would be helpful and greatly appreciated if you could send a copy of your latest catalog to this office at your earliest convenience.) The license may be on a fully paid royalty free basis or, if you prefer, on a running royalty basis with the per unit royalty credited against a non-refundable advance royalty payment.

Affidavit of David Holland, Exhibit A. In subsequent correspondence, HHI's counsel asserted the belief that additional products appeared to have an infringing construction.

By letter dated March 18, 1996, Red Wing's counsel responded to HHI's assertions of infringement regarding the products in dispute and concluded:

> It is our position that none of the Vasque Products mentioned in your letters of October 25, 1995 and December 27, 1995 infringe any of the claims of the '895 patent either by literal infringement or under the Doctrine of Equivalents. We trust that your careful consideration of the enclosed product samples, cross section drawings and claim charts will bring you to the same conclusion.

Affidavit of Melissa Winn, Exhibit C. Subsequent correspondence occurred whereby HHI again asserted infringement of the '895 patent and Red Wing advised that it had no interest in negotiating a license or ceasing the manufacture and sale of the accused hiking boots.

On August 23, 1996, Red Wing filed this civil action seeking a declaratory judgment of non–infringement, invalidity and unenforceability of the '895 patent. On August 29, 1996, HHI filed a civil action against Red Wing in the United States District Court for the Eastern District of Louisiana, seeking a finding of infringement of the '895 patent and requesting injunctive and monetary relief.

HHI moves to dismiss this action for lack of personal jurisdiction, lack of subject matter jurisdiction, or improper venue, or in the alternative, HHI moves for transfer of venue to the United States District Court for the Eastern District of Louisiana. Also before the court, Red Wing moves for a preliminary injunction prohibiting HHI from proceeding in any manner with the civil action entitled *Hockerson–Halberstadt, Inc. v. Red Wing Shoe Company, Inc.,* Civil Action No. 96–2844, the Louisiana litigation.

## DISCUSSION

 HHI moves for dismissal of Red Wing's claims for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal

Rules of Civil Procedure. Plaintiff carries the burden of establishing a prima facie showing that the court has personal jurisdiction over the defendants. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.,* 89 F.3d 519, 522 (8th Cir.1996). When considering a Rule 12(b)(2) motion, the court must view the evidence in favor of the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Id.; Watlow Elec. Mfg. Co. v. Patch Rubber Co.,* 838 F.2d 999, 1000 (8th Cir.1988).

◼ A federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by constitutional due process. *Wessels, Arnold & & Henderson v. National Medical Waste,* 65 F.3d 1427, 1431 (8th Cir.1995); *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 427 (Fed. Cir.1996) (recognizing that the court applies the same standard for personal jurisdiction issues in federal patent actions as it does in diversity actions, except that the patent actions are analyzed under the Fifth Amendment, as opposed to the Fourteenth Amendment); *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991) (applying standard of *International Shoe* and its progeny to question of personal jurisdiction in a federal question case); *Zumbro, Inc. v. California Natural Products,* 861 F.Supp. 773, 777 n. 8 (D.Minn. 1994) (stating that because the patent claims involved federally-created rights, the court would examine due process in light of the Fifth Amendment, as opposed to the Fourteenth Amendment). Minnesota state courts have held that the Minnesota Legislature intended the state's long-arm statute to have the maximum extraterritorial effect allowed under the Constitution; thus, the court must consider whether the assertion of jurisdiction over HHI is consistent with due process. *Minnesota Mining & Manufacturing v. Nippon Carbide Industries,* 63 F.3d 694, 697 (8th Cir.1995) (citing *Domtar, Inc., v. Niagara Fire Insurance Co.,* 518 N.W.2d 58, 60–61 (Minn.App.1994), *aff'd,* 533 N.W.2d 25 (Minn.), *cert. denied,* — U.S. ——, 116 S.Ct. 583, 133 L.Ed.2d 504 (1995)), *cert. denied,* — U.S. ——, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996).

Due process is satisfied when non-resident defendants have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe, Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The requisite minimum contracts must be based on acts of the defendant. *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Whether the minimum contacts are sufficient to satisfy due process depends upon whether the defendant has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). "Purposeful availment" means deliberately engaging in significant activities within a state or creating "continuing obligations" between the litigant and residents of the forum. *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84. A defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J. concurring). Minimum contacts need not include physical presence, but the contacts must be more than "random," "fortuitous," or "attenuated." *Bell Paper Box, Inc. v. Trans Western Polymers,* 53 F.3d 920, 922 (8th Cir.1995) (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). In other words, minimum contacts with the forum state are sufficient if the nonresident defendant "'reasonably anticipate being haled into court there.'" *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas,* 51 F.3d 1383, 1387 (8th Cir.1995) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

The court, in determining the sufficiency of defendant's contacts, considers several factors: (1) the quantity of contacts with the forum state; (2) the nature and quality of

contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994); *Sybaritic, Inc. v. Interport Intern., Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (explaining that the analytical framework incorporates the notions of both "minimum contacts" and "fair play and substantial justice"). The first three considerations are "primary factors," whereas the latter two considerations are "secondary factors" in the inquiry. *Northrup King*, 51 F.3d at 1388. The third factor has been further discussed by the courts as distinguishing between specific and general jurisdiction. " 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.' " *Burlington Industries., Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996) (quoting *Bell Paper Box*, 22 F.3d at 819). Because the first three factors are interrelated, the court will consider those factors together.[1]

■ Red Wing asserts that HHI has sufficient minimum contacts with Minnesota to satisfy due process. Red Wing argues that HHI's assertions of infringement of the '895 patent and negotiations of a licensing agreement are substantial contacts directly related to this action. In evaluating the nature and quality of the contacts, the court attempts to ascertain whether the defendant purposefully availed itself of the benefits and protections of Minnesota law. *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183. Corre-

spondence such as letters, facsimiles, and telephone conversations alone do not establish personal jurisdiction. *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 312–13 (8th Cir.1982). Furthermore, warning letters and negotiations for a license cannot, without more, support personal jurisdiction in an action for a declaratory judgment of invalidity and noninfringement. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed.Cir.) (distinguishing general proposition), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995); *Ryobi America Corp. v. Peters*, 815 F.Supp. 172, 176 (D.S.C.1993) (determining that the declaratory judgment action did not arise out of the letters; rather, the transaction was the granting of a patent in Washington, D.C., and the subsequent manufacture of an allegedly infringing product); *KVH Industries, Inc. v. Moore*, 789 F.Supp. 69, 72–73 (D.R.I. 1992) (explaining that the letters did not assert a claim under the state laws; rather, any rights claimed arose under the United States patent laws such that the defendant lacked "fair warning" to subject him to jurisdiction in the state); *Boatel Industries Inc. v. Wollard*, 2 U.S.P.Q.2d 1946 (D.Minn.1987) (recognizing policy in favor of negotiations and settlement of disputes without litigation).

■ In support of its argument, Red Wing refers the court to *B & J Mfg. Co. v. Solar Industries, Inc.*, 483 F.2d 594, 598 (8th Cir. 1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974), in which the Eighth Circuit Court of Appeals concluded that allegations of infringement and threats of enforcement were sufficient to satisfy minimum contacts in Minnesota. *See Akro Corp*, 45 F.3d at 1547 (approving analysis of *B & J* court); *cf. Land–O–Nod Co. v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1342 (8th Cir.1983) (commenting that the court in

---

1. The court recognizes that the Federal Circuit has directed that the law of the Federal Circuit applies, rather than that of the regional circuit, when determining the issue of whether the court has personal jurisdiction over the out-of-state defendant. *See Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424 (Fed.Cir.1996); *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed.Cir.1995). In *Zumbro, Inc. v. California Natural Products*, 861 F.Supp. 773 (D.Minn.1994), the court posited whether this choice of law was limited to

cases analyzing the "stream of commerce" theory discussed by the United States Supreme Court in *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Because Red Wing raises the "stream of commerce" theory, the court will apply the law of the Federal Circuit but will also discuss the issue within the Eighth Circuit analytical framework which does not deviate from Federal Circuit decisions.

*B & J* did not specifically discuss the relationship of the cause of action to the forum). The circumstances of the *B & J* case, however, are distinguishable.

In *B & J*, the court stated that the patent holder's requests and threats were "designed to reduce competition and thereby improve defendant's marketing and economic position." *B & J*, 483 F.2d at 598. In addition, the patent holder advertised its products, sold its products, and maintained a business interest in the state through services. *Id.; see Boatel*, 2 U.S.P.Q.2d at 1948–49 (distinguishing *B & J* based on competitive spirit behind the claims of infringement). In this case, HHI does not manufacture, advertise, or sell any product. Although Red Wing characterizes HHI's initiation of negotiations as an attempt on HHI's part to conduct a business transaction, the court considers the KVH court's analysis:

> [T]he court does not feel that one letter (or even several letters) asserting allegedly valid patent rights, can give rise to personal jurisdiction, specific or general. This cannot be the sort of meaningful, purposeful forum contacts the Supreme Court had in mind in Burger King and Asahi Metal. If the Court found personal jurisdiction in this case, it would be tantamount to announcing that all patent holders are susceptible to suit in this forum if they assert their rights against [a resident]. This is not a desirable policy. It would be unfair and unjust to adopt a rule that to uphold her rights, a patent holder must submit to the jurisdiction of a wrongdoer's forum.

*KVH*, 789 F.Supp. at 73; *see Ryobi America*, 815 F.Supp. at 176 (quoting *KVH Industries, Inc. v. Moore*, 789 F.Supp. 69 (D.R.I.1992)). The court is also mindful of the recognized public policy which favors negotiations and settlement without litigation. *See Digi–Tel Holdings*, 89 F.3d at 524–25 (recognizing public policy in favor of negotiations and settlement); *Boatel*, 2 U.S.P.Q.2d at 1949. The court concludes that the correspondence and communications were negotiations to a settlement which, by themselves, are not constitutionally sufficient minimum contacts.

Red Wing also asserts that HHI's licensing of more than 30 companies to make, use, and sell products covered by the '895 patent has a direct, foreseeable effect in Minnesota such that due process is satisfied. In making this argument, Red Wing relies on the sales and contacts that the licensees have had with Minnesota. Red Wing claims that jurisdiction is properly exercised over HHI because it was reasonably foreseeable to HHI that products would be sold in Minnesota, and that HHI would receive royalty payments based on those sales.

Red Wing refers the court to *Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 428 (Fed.Cir.1996), in which the Federal Circuit discussed the assertion of personal jurisdiction over a corporation "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." In *Viam*, the plaintiff, believing itself threatened with a suit for patent infringement, brought a declaratory judgment action against the nonresident patent holder. The defendant moved for dismissal of the suit, alleging that the court did not have personal jurisdiction. The court determined that it had personal jurisdiction over the nonresident corporation due in part to the marketing agreements and practices that the patent holder had with an exclusive distributor to advertise, market, and distribute the patented products. The court determined that the nonresident patent holder reasonably should have anticipated being brought into court in California because it established a regular chain of distribution and "knowingly and intentionally exploited the California market through its exclusive distributor's advertising in California, and by establishing channels for providing regular advice in California." *Viam*, 84 F.3d at 429. In addition, the court relied on the contacts of the exclusive distributor which advertised and sold the patent holder's products in California. *Id.*

Red Wing argues that "by creating its network of 30–plus companies authorized to make, use, and sell shoes under the '895 patent, HHI took purposeful actions having foreseeable effects in Minnesota, and reaped benefits from the Minnesota economy." Plaintiff's Memorandum in Opposition to Motion to Dismiss at 18. The court concludes

that Red Wing's reliance on *Viam* and similar cases is misplaced. Unlike the patent holder in *Viam*, HHI does not have exclusive distributors and does not manufacture, market, or sell a product. Similarly, HHI does not exercise any form of control over the licensees. In other words, the companies which have a license are free to manufacture, market, and sell products which incorporate the patent without the consideration of HHI. Thus, the court determines that the "stream of commerce" theory discussed in *Viam* is inapplicable to this case. The court concludes that the licensing agreements and settlements reached between HHI and the companies, which have offices or retail outlets in Minnesota or which sell products incorporating the patent in Minnesota, are insufficient contacts to satisfy due process.

Red Wing also asserts that the exercise of personal jurisdiction is consistent with fair play and Minnesota's interest in providing its citizens a forum. Although it is true that Minnesota has an interest in providing a forum for its residents, such an interest cannot confer jurisdiction upon the court without sufficient minimum contacts.

### CONCLUSION

The court, having carefully considered the relevant factors, concludes that subjecting HHI to suit in Minnesota is contrary to principles of due process. Because the court does not have personal jurisdiction over HHI, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss for lack of personal jurisdiction is granted (Doc. No. 5);

2. Plaintiff's motion for preliminary injunction is denied as moot (Doc. Nos. 14 and 15);

3. Plaintiff's motion to file its supplemental memorandum is granted, the court has reviewed plaintiff's supplemental memorandum and defendant's response (Doc. No. 25);

4. This action is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**