United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 96-3624

Ronald L. Aylward,                *
                                      *
     Appellant,              *   Appeal from the United States
                                      *   District Court for the Eastern
     v.                      *   District of Missouri.
                                      *
Fleet Bank,                  *
                                      *
     Appellee,               *
                                      *
     and                    *
                                      *
Chase Manhattan Bank, N.A.;     *
TRW, Inc.; CSC Credit Services,   *
Inc.; and Trans Union Corporation,  *
                                      *
     Defendants.            *

_____

Submitted: April 16, 1997

Filed: August 14, 1997
_____

Before LOKEN, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In mid-1994, Fleet Bank of Albany, New York, issued two credit cards to "Ronald Aylward," allegedly of East Moriches, New York, who used both the

plaintiff's name and his social security number in applying for the cards. The plaintiff, however, has lived in Missouri all of his life. The accounts became delinquent within a short time in the amount of approximately $5,500, and Fleet Bank notified several credit reporting agencies about the delinquency. Those agencies included the information, along with a notation reflecting that the delinquency had been "charged off" as a bad debt, on the plaintiff's credit record. In mid-1995, a bank in Uniondale, New York, denied credit to the plaintiff because of the negative references on his credit record.

The plaintiff -- the "real" Ronald Aylward -- sued Fleet Bank, which moved to dismiss for lack of personal jurisdiction. The district court granted the motion, and Mr. Aylward appeals. We affirm the order of the district court.[1]

I.

The district court held that the Missouri long-arm statute, see Mo. Ann. Stat. § 506.500.1(3) ("commission of a tortious act within this state"), was the appropriate basis, if any, for Mr. Aylward's assertion of the court's personal jurisdiction over Fleet Bank. The parties evidently do not dispute that conclusion on appeal.

The district court also held, however, that Fleet Bank did not have the "minimum contacts," International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945), necessary under the due process clause to sustain the exercise of personal jurisdiction over it. Those minimum contacts have to be of such a nature as to support the conclusion that Fleet Bank "purposefully avail[ed] itself of the privilege of conducting activities" in Missouri, "thus invoking the benefits and protections of [Missouri's] laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also International Shoe Co., 326 U.S. at 319. It is apparently undisputed that the only contacts that Fleet Bank had

_____

[1]The Honorable Stephen Nathaniel Limbaugh, United States District Judge for the Eastern District of Missouri.

with Missouri were two telephone calls to Mr. Aylward in January, 1995; a letter in January, 1995, sending some affidavits for Mr. Aylward to complete; and a third telephone call to Mr. Aylward in July, 1995.

The parties agree that the question of minimum contacts may be resolved by a consideration of the five criteria recently set forth in Burlington Industries, Inc. v. Maples Industries, Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). Primary considerations are "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; [and] (3) the relation of the cause of action to the contacts," id., which in this case, the parties also agree, concerns whether Fleet Bank "purposely directed its activities at forum residents, and [whether] the litigation results from injuries arising out of, or relating to, those activities" (creating "specific personal jurisdiction"), id. at 1103; see also Mo. Ann. Stat. § 506.500.3. Secondary considerations are "(4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." Burlington Industries, Inc., 97 F.3d at 1102.

## II.

Fleet Bank's contacts with Missouri consist of three telephone calls and one letter within seven months. Such contacts are not ordinarily sufficient by themselves to support the exercise of personal jurisdiction with respect to a defendant. See, e.g., Burlington Industries, Inc. 97 F.3d at 1003; Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 922-23 (8th Cir. 1995); and Federal Deposit Insurance Corp. v. Malmo, 939 F.3d 535, 536-37 (8th Cir. 1991). Thus the nature, quality, and quantity of Fleet Bank's contacts (the first and second criteria listed above) militate against the exercise of personal jurisdiction.

We leave aside for the moment the third criterion. With respect to the fourth, we assume that Missouri has an interest in providing a forum for its residents. With respect to the fifth criterion, we note that on the issue of convenience of the parties, the parties' interests are presumably in equipoise, since it apparently would be equally

convenient for Mr. Aylward in Missouri and Fleet Bank in New York. We have, however, no evidence by way of affidavit or otherwise from either party on this question. Since Mr. Aylward has the burden of proof, his failure to offer any evidence with respect to the convenience of the parties means that this factor militates against him. We turn, then, to the third criterion to be used in considering the question of personal jurisdiction under the due process clause.

To evaluate meaningfully the third criterion (the relationship between the cause of action and the contacts), we must examine Mr. Aylward's complaint. It alleges that Fleet Bank defamed Mr. Aylward, interfered with his business expectancy "to be extended credit as necessary for his personal and professional endeavors," committed fraud, and made negligent misrepresentations by communicating "derogatory credit references" -- "false statements of fact" -- to credit reporting agencies, and then failing to correct those references, knowing that they would eventually be seen by others. The complaint also alleges that by those actions, Fleet Bank committed a "prima facie tort," i.e., acts "done with the intent of causing harm ... and ... without valid business justification," presumably describing an actionable wrong similar to the tort of outrage or the intentional infliction of emotional distress.

It is true that Fleet Bank's contacts with Mr. Aylward, and thus Missouri, were related to the acts that he complains of, in the sense that the telephone calls and the letter all concerned the credit cards and the notice of a past-due balance or a "charged off" delinquency on Mr. Aylward's credit record. But this relationship is merely tangential, not causal, and it is not otherwise of any particular significance. We certainly cannot say that Mr. Aylward's injuries arose from those telephone calls and letter. Even accepting for purposes of this opinion the assumption that Fleet Bank knew, after the first telephone call in January, 1995, that Mr. Aylward was not the true miscreant (a finding that the district court carefully avoided making), at least one notice of a past-due balance went to a credit reporting agency in mid-1994, six months earlier. Mr. Aylward's own affidavit declares, moreover, that during the second telephone call,

also in January, 1995, Fleet Bank advised him that "erroneous credit information ... had [already] been reported to the national credit reporting agencies."

The acts that Mr. Aylward cites in his complaint as tortious are the communications of "derogatory credit references" to credit reporting agencies and the failures to correct those references. Those acts and omissions took place either in Albany, New York, the principal place of business for Fleet Bank; in Niagara Falls, New York, the location of Fleet Bank's credit card operations; in West Seneca, New York, the location of the office that attempts to collect overdue accounts for Fleet Bank credit cards; in Omaha, Nebraska, the source for electronic transfers of information to credit reporting agencies about overdue accounts on Fleet Bank credit cards; or, possibly, in Alphretta, Georgia, or Chicago, Illinois, or Allen, Texas, the locations of the three credit reporting agencies allegedly involved in this case. None of those acts or omissions occurred in Missouri.

Nor can we say that Fleet Bank directed its activities specifically at Missouri residents. The credit card applications showed an East Moriches, New York, address, and it seems to be merely happenstance that the "real" Ronald Aylward lives in Missouri. In other words, the chances seem equally likely that the "real" Ronald Aylward would live in any of the fifty states or, at least, in any of the 48 states in the continental United States. Thus we see none of the kind of intentional reaching out to Missouri residents that seems to be contemplated by the case law. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76 (1985). We conclude, accordingly, that the district court properly granted Fleet Bank's motion to dismiss.

III.

We see no abuse of discretion, furthermore, in the district court's denial of Mr. Aylward's motion for postjudgment relief. For the reasons stated, therefore, we affirm the order of the district court.

-5-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.