**AERO SYSTEMS ENGINEERING, INC., a Minnesota corporation, Plaintiff,**

v.

**OPRON, INCORPORATED, a Quebec corporation, Defendant.**

**No. CIV. 97–1968 (JRT/RLE).**

United States District Court, D. Minnesota.

July 31, 1998.

David Arthur Ranheim, Steven C. Nelson, Dorsey & Whitney, Pillsbury Center South, Minneapolis, MN, for Plaintiff.

Gary W. Hoch, Richard L. Pemberton, Jr., Meagher & Geer, Minneapolis, MN, for Defendant.

## ORDER

TUNHEIM, District Judge.

This dispute arose out of the construction of a jet engine testing facility for Rolls–Royce(Canada) in Lachine, Quebec. Plaintiff Aero Systems Engineering, Inc. ("ASE") and defendant Opron, Inc. submitted a successful bid for the project. ASE acted as a subcontractor, and Opron as the general contractor. In 1997, Opron drew upon ASE's line of credit. ASE claims Opron did not have a right to use its line of credit. ASE commenced this action against Opron for breach of contract, conversion and fraud. Opron moved to dismiss the complaint based on lack of personal jurisdiction and *forum non conveniens.*

This matter is before the Court on Opron's objections to Magistrate Judge Raymond L. Erickson's Report and Recommendation concerning the motion to dismiss. In the June 29, 1998 Report and Recommendation, the Magistrate Judge recommended that the Court deny Opron's motion. The Magistrate Judge concluded that ASE made a *prima facie* showing of sufficient contacts to confer specific *in personam* jurisdiction over Opron. The Magistrate Judge also concluded that the factors enumerated in *Gulf Oil v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) do not favor of dismissal based on *forum non conveniens.* Opron objects to both conclusions.

The Court has reviewed Opron's objections *de novo* pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2). The Court agrees with the Magistrate Judge's analysis and conclusions. The Court accordingly adopts the June 29, 1998 Report and Recommendation and overrules Opron's objections.

## ORDER

Based on the foregoing, and on all the files, records and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 27] and **ADOPTS** the Magistrate Judge's Report and Recommendation filed June 29, 1998 [Docket No. 26].

**IT IS HEREBY ORDERED** that the motion to dismiss by defendant Opron, Inc. [Docket No. 6] is **DENIED.**

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant's Motion to Dismiss. A Hearing on the Motion was conducted on February 11, 1998, at which time, the Plaintiff Aero Systems Engineering, Inc. ("Aero Systems") appeared by Charles H. Brower II and Charlotte J. Hart, Esqs., and the Defendant Opron, Incorporated ("Opron") appeared by Gary W. Hoch and Richard L. Pemberton, Esqs.

For reasons which follow, we recommend that the Motion to Dismiss be denied.

## II. *Factual and Procedural Background*

This action arises from a contractual dispute concerning the construction of a jet engine testing facility. Aero Systems, a Minnesota Corporation that is headquartered in St. Paul, Minnesota, is a firm that performs consulting, design, and engineering services in connection with the construction of test facilities for jet engines. Opron, which is located in Boucherville, Québec, a suburb of Montreal, specializes in heavy industrial and manufacturing construction. It is not disputed that Opron maintains no offices, owns no property, employs no agents or authorities, and, generally, does not conduct business in the State of Minnesota. See, *Gagnon Aff.* ¶ 3–4.

At the center of this litigation is the construction of a new jet engine testing facility for Rolls–Royce(Canada), in Lachine, Québec, which is another suburb of Montreal. In late 1992, or early 1993, Aero Systems contacted Opron to form a team that would submit a bid to build and develop the Lachine facility. The Aero Systems/Opron team was awarded the construction project. The pair eventually agreed that Opron would be the general contractor for the project, and that Aero Systems would be a subcontractor. According to Michael Browne ("Browne"), Aero Systems' treasurer, secretary, and director of test cell programs, this arrangement was attained after much correspondence between the two firms, and four face-to-face negotiations—three of which took place in Canada, and the final meeting being conducted in St. Paul. *Browne Aff.* ¶ 5.

At the conclusion of the negotiations in Minnesota, an agreement was reached, which is embodied in the Purchase Order and contract dated August 12, 1993. *Purchase Order; Pemberton Aff.*, Ex. A. As part of this agreement, Opron represented that it would share financial responsibility for any errors or omissions in Aero Systems' work. *Purchase Order*, App. B. Opron's representative signed the Purchase Order in Canada and, in turn, Aero Systems' project manager executed the agreement in St. Paul. The Purchase Order makes reference to the General Contract with Rolls Royce(Canada), as follows:

> The scope of work shall further be as outlined in the project scope matrix dated April 13, 1993, and *all work shall be carried out in accordance with the following* [Rolls Royce(Canada)] contract documents, dated April 7, 1993:
>
> Section "B"  General Conditions
> Section "C"  Supplementary General Conditions
> Section "D"  Technical Specifications
> Section "F"  Contractor Proposal OPRON's Scope of Work dated April 6, 1993.

*Purchase Order* [emphasis added].

As noted, Opron was the general contractor for Rolls–Royce(Canada), and was party to the General Contract referenced in the Purchase Order.

Section B of the Rolls–Royce General Contract, which was entitled "General Conditions," describes the procedure to be employed in the resolution of disputes. In Section 5.1, the General Contract states that:

> Any dispute or difference in relation to the Contract Documents or arising out of the Work which cannot be amicably resolved shall, at the request of either party by notice in writing to the other, be referred to a Disputes Committee consisting of two (2) senior executives of each party, or their representatives.

The General Conditions state that the "laws of the Place of Work shall govern the Work and the interpretation of Contract." *General Contract, Division B § 14.1.* The Supplementary General Conditions further specify that the General Contract "shall be subject to and interpreted in accordance with the laws of Quebec." *General Contract, Division C § 14.1.* Opron also agreed to "incorporate the terms and conditions of the Contract Documents into all subcontracts [it] enters with [its] Subcontractors." *General Contract, Division B § 8.1.*

Under the Purchase Order, Aero Systems furnished design and engineering services, generally emanating from its St. Paul headquarters. Opron, which held no technical expertise in those aspects of the project assigned to Aero Systems, did not provide on-site supervision of the work that took place in St. Paul. *Gagnon Aff.* ¶ 10. Rather, it coordinated the project from Lachine, Québec, and only occasionally sent representatives to St. Paul to review Aero Systems' work. *Gagnon Aff.* ¶ 9–11; *Browne Aff.* ¶ 12. The bulk of Opron's project coordination was

accomplished through frequent written correspondence from Québec to Minnesota, via the mails and electronic media. *Browne Aff.* ¶ 13.

In 1997, a dispute developed between the parties over acoustical problems that were experienced in the jet engine testing facility and, as a consequence, the facility had not yet been completed. Opron, in an attempt to cure these difficulties, incurred expenses in making modifications to the facility. It drew upon Aero Systems' letter of credit, which was issued by the Bank of Montreal under the Purchase Order, in the total amount of CDN$ 978,717.13. *Browne Aff.* ¶ 14; *Demand Letter from Aero Systems to Opron of 8/28/97; Ring Aff.* Ex. A. Aero Systems, believing that Opron had no right to call upon the letter of credit, filed suit in this District, alleging that Opron had committed a breach of contract, conversion, and fraud.

### III. *Discussion*

Opron's Motion to Dismiss has two components. First, Opron challenges the exercise of personal jurisdiction over it as contravening both the Minnesota Long–Arm Statute, *Minnesota Statutes Section 543.19*, and the Due Process Clause of the Fourteenth Amendment. Second, even if proper jurisdiction over its person were assumed, Opron asserts that the action should be dismissed, under the doctrine of *forum non conveniens*, so that it might be litigated in a Canadian Court, in the Province of Québec.

### A. *Personal Jurisdiction.*

■ 1. *Standard of Review.* Once a defendant has challenged a Federal Court's *in personam* jurisdiction over it, the plaintiff bears the burden of proving that such jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996); *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir.1995), citing *Dakota Indus., Inc. v. Dakota Sportswear,* 946 F.2d 1384, 1387 (8th Cir.1991). Although the plaintiff bears the ultimate burden at Trial to establish personal jurisdiction by a preponderance of the evidence, where the challenge is made in a Motion to Dismiss, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant. *Digi–Tel Holdings, Inc. v. Proteq Telecommunica-*

*tions (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996) [citations omitted]. Where, as here, personal jurisdiction is challenged at a pretrial stage, all evidence must be viewed in a light most favorable to the plaintiff, and all factual disputes must be resolved in the plaintiff's favor. *Id.,* citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* supra at 1387; *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 966 F.Supp. 833, 836 (D.Minn.1997).

■ Our inquiry into the Court's personal jurisdiction, over a non-resident defendant, has two facets:

1) Whether the facts presented satisfy the forum State's long-arm statute; and

2) Whether the non-resident has "minimum contacts" with the forum State so that the Court's exercise of jurisdiction would be fair and in accordance with due process.

*Wessels, Arnold & Henderson v. National Medical Waste,* supra at 1431; *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir.1995).

The Minnesota Supreme Court has held that Minnesota's Long–Arm Statute, *Minnesota Statutes Section 543.19*, extends the State's jurisdiction to the fullest extent permitted by the Due Process Clause. See, *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 410–411 (Minn.1992); see also, *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1390 (8th Cir.1997). As a consequence, our inquiry may be focused upon whether an assertion of jurisdiction, over a defendant, would be consistent with the constitutional guarantees of due process. *Wessels, Arnold & Henderson v. National Medical Waste,* supra at 1431; *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* supra at 1387.

■ Under the Due Process Clause, "personal jurisdiction over a nonresident defendant is proper only if the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington,* 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945), citing *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). In this respect, "the substantial connection between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state," *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), "thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, the Court considers whether the defendant's conduct, and its connection to the forum State, are such that the defendant should reasonably have anticipated being haled into the Courts of that State, by purposefully availing itself of the privilege of doing business there. *Id.* at 474, 105 S.Ct. 2174.

As the governing law makes clear:

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts * * * or because of the "unilateral activity of another party or a third person."

*Id.* at 475, 105 S.Ct. 2174.

■ Accordingly, in determining the sufficiency of a defendant's contacts, the Court must evaluate these three primary factors:

1) the nature and quality of contacts with the forum state;

2) the quantity of such contacts; and

3) the relation of the cause of action to the contacts.[1]

*Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir.1997), citing *Burlington Industries, Inc. v. Maples Industries, Inc.*, supra at 1102; *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, supra at 1390, citing *Minnesota Min. & Mfg. v. Nippon Carbide Indus.*, 63 F.3d 694, 697 (8th Cir.1995), cert.

denied, 516 U.S. 1184, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996).

■ Secondary factors to be considered include:

4) the interest of the forum state in providing a forum for its residents; and

5) the convenience of the parties, to determine whether personal jurisdiction comports with fair play and substantial justice.

*Aylward v. Fleet Bank*, supra at 618; *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, supra at 1390.

Because the first three factors are closely interrelated, they should be considered together. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, supra at 523; *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, supra at 1388.

■ 2. *Legal Analysis.* The alleged contacts in this action are all specifically related to the business relationship between Aero Systems and Opron, and there is no suggestion that Opron maintains "continuous and systematic" contacts with the forum. Thus, Aero Systems asserts specific rather than general jurisdiction over Opron.

We first consider the primary factors. In making its *prima facie* showing, Aero Systems has established the existence of a number of contacts between Opron and the forum, which were related to the underlying claims in this litigation. First, the contractual arrangement between the parties was negotiated in St. Paul, as well as in Québec. *Browne Aff.* ¶ 5. Second, the Purchase Order was signed, on Aero Systems' part, in St. Paul. *Browne Aff.* ¶ 8. Third, the majority of the labor, that was performed pursuant to the Purchase Order, took place in Minnesota. *Browne Aff.* ¶ 9. Additionally, Opron representatives occasionally visited St. Paul in order to "ensure the successful co-ordination of

---

1. The third factor distinguishes between specific and general jurisdiction. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 n. 4 (8th Cir.1996); *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 n. 4 (8th Cir.1995). "Specific jurisdiction" arises from causes of action that are directly related to a defendant's actions within the forum state, while "general jurisdiction" does not depend upon the relationship between the cause of action and the contacts, but requires "continuous and systematic" contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); see also, *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, supra at 523 n. 4.

the various works in the project" with Aero Systems' efforts. *Gagnon Aff.* ¶ 9; *Browne Aff.* ¶ 11. Lastly, Browne alludes to what he estimates to be "hundreds of letters and facsimiles from Opron," which Opron sent to St. Paul from 1993 to 1995, and which are now contained in six, three-inch binders. *Browne Aff.* ¶ 13.

In light of these averments, we agree with Aero Systems that it has carried its burden of making a *prima facie* showing of personal jurisdiction over Opron. It is true, as Opron insists, that occasional visits to the forum State, by its engineering specialists, correspondence with a resident of the forum State, and other the other contacts are not separately sufficient to establish personal jurisdiction. See, *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* supra at 523 (phone calls into a State are relevant, but do not, taken alone, establish jurisdiction); *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281–82 (8th Cir.1991)(three visits to forum State, in implementation of sales contract, do not confer jurisdiction). Personal jurisdiction, however, "depends upon a 'defendant's contacts with the forum in the aggregate, not individually,'" and those contacts are not considered in a vacuum, but in light of the "totality of the circumstances." *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.,* supra at 1390, quoting *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* supra at 1388.

Opron's regular correspondence with Aero Systems, and the occasional visits to Minnesota by its representatives, related to the formation and performance of the contract at issue, and support the exercise of personal jurisdiction. See, *Id.* at 1390–91. Coinciding with these contacts, and reinforcing Aero Systems' claim that Opron purposefully availed itself of the benefit of Minnesota's laws, is the fact that the majority of Aero Systems' work, under the Purchase Order, was performed in the forum State. See, *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* supra at 1433 (fact that majority of work required under contract was performed in forum State suggestive of defendant's purposeful availment). Finally, some significance attaches to the fact that the final signature, which was necessary to execute the Purchase Order, was affixed in Minnesota, by Aero Systems. While Aero Systems' unilateral activity cannot be used to manufacture contacts between Opron and the forum, see, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Record reflects that Opron signed the agreement, and then forwarded it to Minnesota, for Aero Systems' signature. As such, its own conduct contributed to the final execution of the contract in Minnesota. See, *Kline v. Kawai America Corp.,* 498 F.Supp. 868, 872 (D.Minn.1980)(under Minnesota law, where last party to sign contract did so in Minnesota, contract was "made" in Minnesota), citing *Johnny's Plumbing & Heating, Inc. v. Sperry Rand Corp. Univac Division,* 298 Minn. 294, 215 N.W.2d 63, 65 (1974).

Opron's Memorandum also implies that the choice-of-law provision in the General Contract—which selected Québec law as governing—militates against personal jurisdiction over it. The possibility, that the law of another forum may control, is inapplicable to the issue of personal jurisdiction under the Due Process Clause. When the argument was raised, that personal jurisdiction was not proper over an action that would be controlled by foreign law, our Court of Appeals rejected the contention, explaining as follows:

> The central issue before this Court, however, is personal jurisdiction, not choice of law. The question of the complexity of applying four nations' patent laws presents itself in the course of litigation only after jurisdiction over the defendant is established. Therefore, we must determine whether Minnesota has jurisdiction before we consider what law will be applied to this case. It often happens that a forum with jurisdiction must apply the law of another State or country.

*Minnesota Min. & Mfg. v. Nippon Carbide Indus.,* supra at 698. Ultimately, our inquiry is limited to whether Aero Systems has made a *prima facie* showing of sufficient contacts between Opron and this forum to sustain a finding of personal jurisdiction. Our examination of the totality of the circumstances, under the first three factors of the Due Process analysis, convinces us that it has. Cf., *Wessels, Arnold & Henderson v. Nation-*

*al Medical Waste, Inc.,* supra at 1432–33 (regardless of who initiated contact, numerous mail and telephone contacts, performance of work in Minnesota, coupled with visits by representatives and choice of law provision satisfies due process standard); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,,* 22 F.3d 816, 820 (8th Cir.1994)(visit to forum State, correspondence into forum State, and performance of contract within forum State "were not random, fortuitous, or attenuated contacts").

In sum, although it cannot be said that Opron initiated the contact with Aero Systems, and with the forum State, once started, Opron actively nurtured and fostered a continuous business relationship with Aero Systems, through activities conducted in Minnesota, and purposefully availed itself of the privileges and benefits of conducting business in this State.

■ Upon consideration of the "secondary factors," our conclusion remains the same. Minnesota has an undeniable interest in providing its residents with a forum. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* supra at 524. As well, Aero Systems and Opron have highlighted the location of witnesses, and the other sources of proof which, each insists, tip the balance of convenience in favor their respective choices of forum. These underlying considerations are discussed more fully in connection with the issue of *forum non conveniens,* but are clearly the subject of a sufficiently material dispute—viewing, as we must, the facts most favorably to Aero Systems—to sustain a finding that litigating in this forum comports with fair play and substantial justice. See, *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.,* supra at 1390. Accordingly, we recommend that the Motion to Dismiss, for lack of personal jurisdiction, be denied.

### B.  *Forum Non Conveniens.*

■ 1. *Standard of Review.* Under the doctrine of *forum non conveniens,* " 'when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish * * * oppressiveness and vexation to a defendant * * * out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion,' dismiss the case, even if jurisdiction and proper venue are established." *American Dredging Co. v. Miller,* 510 U.S. 443, 447–48, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)[alterations in original].  It is a discretionary doctrine—applicable only when the alternative forum is abroad—which vests in the District Courts the power to abstain from the exercise of jurisdiction "even where authorized by statute if 'the litigation can more appropriately be conducted in a foreign tribunal.' " *Polanco v. H.B. Fuller Co.,* 941 F.Supp. 1512, 1523 (D.Minn.1996), quoting *De Melo v. Lederle Labs.,* 801 F.2d 1058, 1060 (8th Cir.1986).

■ In the seminal decision of *Gulf Oil v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), Justice Jackson enumerated a nonexhaustive[2] list of factors which must be considered in the *forum non conveniens* equation. The Court categorized these considerations into "private interest," and "public interest" factors. Among the private interest factors are:

1) relative ease of access to sources of proof;

2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

3) possibility of view of the premises, if view would be appropriate to the action; and

4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

---

2. As the Supreme Court explained, in announcing the private and public interest factors:

Wisely, it has not been attempted to catalogue the circumstances which will justify or require either the grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

*Piper Aircraft Co. v. Reyno*, supra at 241 n. 6, 102 S.Ct. 252, quoting *Gulf Oil Corp. v. Gilbert*, supra at 508, 67 S.Ct. 839.

The public interest factors included the following:

1) administrative difficulties flowing from court congestion;

2) the forum's interest in having localized controversies decided at home;

3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.*, quoting *Gulf Oil Corp. v. Gilbert*, supra at 509, 67 S.Ct. 839.

Under this analysis, it is well-settled that the defendant bears the ultimate burden of persuasion in satisfying the Court that a *forum non conveniens* dismissal is appropriate. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, supra at 1389. The "central principle of the Gilbert doctrine" is that, in weighing these factors, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reid–Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir.1991), quoting *Gulf Oil Corp. v. Gilbert*, supra at 508, 67 S.Ct. 839.

Equally important is the rule that the doctrine of *forum non conveniens* may be applied to deprive a United States citizen of its choice of forum in only the most exceptional circumstances. See, *id.*, at 1395; see also, *Piper Aircraft Co. v. Reyno*, supra at 256, 102 S.Ct. 252 ("a foreign plaintiff's choice deserves less deference" than that of a citizen); *Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 697, 70 S.Ct. 861, 94 L.Ed. 1206 (1950)("suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners"). Although a defendant's burden of showing the requisite *Gilbert* factors may be heavier where a United States citizen is the plaintiff, the scrutiny is not quite as stringent when the United States "citizen" is

a corporate entity. See, *Reid–Walen v. Hansen*, supra at 1395 (given realities of international commerce, Courts "have partially discounted" plaintiff corporations' United States citizenship), citing *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir.1990).

2. *Legal Analysis.* Keeping in mind the heightened scrutiny we apply when a *forum non conveniens* dismissal would deprive an American corporation, such as Aero Systems, of an ability to litigate in a United States Court, we have considered whether an available alternative forum exists, and the competing private and public interest factors, that the parties have addressed. Québec provides an available and adequate alternative forum, but the private and public interest factors, which were outlined in *Gilbert*, do not weigh heavily in favor of litigating there so as to overcome the weighty presumption in favor of Aero Systems' choice of forum.

a. *Available and Adequate Alternative Forum.* The Province of Québec is both available and adequate as an alternative forum for the action. Ordinarily, an alternative forum is "available" when the "defendant is 'amenable to process' in the other jurisdiction," *Piper Aircraft Co. v. Reyno*, supra at 255 n. 22, 102 S.Ct. 252, quoting *Gulf Oil Co. v. Gilbert*, supra at 506–07, 67 S.Ct. 839, while "the test for adequacy is simply whether a party will have some remedy and will not be treated unfairly." *Polanco v. H.B. Fuller Co.*, supra at 1525, citing *Reid–Walen v. Hansen*, supra at 1393 n. 2; see also, *Piper Aircraft Co. v. Reyno*, supra at 255 n. 22, 102 S.Ct. 252 ("where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative"). The possibility that the substantive law of the alternative jurisdiction is less favorable to the plaintiff "should ordinarily not be given conclusive or even substantial weight," unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all * * *." *Piper Aircraft Co. v. Reyno*, supra at 247, 254, 102 S.Ct. 252.

There is no disagreement that the Canadian judicial system provides an avail-

able and adequate alternative forum for this litigation. Aero Systems insists that this would not be the case, however, if the arbitration clause provided in the General Contract were applied to its dispute with Opron. Then, Aero Systems argues, the case would not be allowed to proceed in any judicial forum, but would be decided by the Disputes Committee described in Section 5.1 of the General Contract.

In our view, this argument extends the availability and adequacy inquiry too far into the merits of the action, and circumvents the real question of whether dismissal in favor of proceeding in Canada would be tantamount to depriving Aero Systems of any remedy at all. Clearly, such would not be the case here. Whether the litigation proceeds in this District, or is transferred to a Canadian tribunal, a Court of law will necessarily decide the enforceability and applicability of the arbitration clause. Aero Systems has not suggested that a Canadian Court's interpretation of the interface, between the General Contract and the Purchase Order, would be so clearly unsatisfactory as to completely deprive it of a remedy. Simply put, Canada is "available" as a forum, and its ability to offer relief to the parties is "adequate."

b. *Private Interest Factors.* The private interest factors do not decidedly weigh in favor of either alternative as the more convenient venue for this litigation. First, the project site is located in Lachine, Québec. Aero Systems own recitation of the facts indicates that the controversy was sparked by "acoustical problems" with the jet engine testing facility, which Opron improvidently attempted to repair. There can be little doubt that the testing facility itself could be a critical source of proof that would be more easily accessed were the litigation centered in Québec. Aero Systems argues, however, that the only issue in the litigation "is whether the Purchase Order requires Opron to pay for the implementation of design changes, and whether Opron committed intentional torts in drawing on ASE's letter of credit," thereby obviating the need to inspect the facility. *Pl.'s Mem.* at 25. At the same time, Aero Systems suggests that, if any premises will require physical examination, then Aero Systems' testing laboratory, in St. Paul, is a more likely candidate than the Lachine facili-

ty. Browne describes the importance of the St. Paul laboratory as follows:

> If Opron were to litigate the adequacy of ASE's design work and the alternative design solutions for the Rolls–Royce acoustical problems, experiments conducted at ASE's testing laboratory in St. Paul would likely become an important source of proof in ASE's and Opron's cases. This laboratory is one of the few of its kind in the world. It occupies over 25,000 square feet, has a 30–foot diameter vacuum sphere, and contains 14 wind tunnels. These facilities obviously cannot be moved to Quebec, and—to my knowledge—there are no comparable facilities in Quebec.

*Browne Aff.* ¶ 18.

Given the Record before us, we are unable to conclude that one facility will play a more important role in evaluating the adequacy of Aero Systems' design work, than the other. We can only say that, should the need to view either or both facilities arise, neither forum presently appears to have a lock on being the more desirable locus of the litigation.

Likewise, the ease of access to witnesses, and to other sources of proof, would not be tremendously advanced by the selection of either forum. Neither party will have difficulty in summoning their employees, and their former employees as witnesses. At the same time, we find that the comparative burdens to be imposed on the witnesses, and upon the parties, in transporting the witnesses are in equipoise. In his Affidavit, Conrad Gagnon, Opron's president, identifies two residents of Québec, whose testimony would be necessary, and four more who may also be called as witnesses, should the case proceed to Trial. *Gagnon Aff.* ¶ 13. Aero Systems has also listed, in an Affidavit, a number of individuals, who reside in Minnesota, and who possess information that would be relevant to the merits of the action. *Browne Aff.* ¶ 15 With respect to documentary evidence, both parties rest on their mutually conclusory contentions, that most of the relevant documents are located in their respective locales. Of course, it may turn out that some witnesses are more crucial than others, and some documents could bear more

heavily on the action than others. However, without a full consideration of the merits of the action, after discovery and briefing, the Court is in no position to pierce the parties Affidavits, and compare the soundness of the representations' therein.

In sum, the relevant witnesses are not gathered at one central location, but are geographically divided between the parties' respective locales. Likewise, the discovery process will require the transportation of documents wherever the action should be venued.[3] The Québec facility, and Aero Systems' St. Paul laboratory, each have an uncertain degree of germaneness to the litigation, which cannot be precisely ascertained on this Record. Thus, we conclude, on the totality of the Record, that inconvenience in securing witnesses, in viewing the premises, and in accessing other sources of proof, would occur in this, or in the Canadian forum, and that the private interest factors do not decidedly weigh in either party's favor.

b. *Public Interest Factors.* The *Gilbert* public interest factors, that Opron cites in favor of a *forum non conveniens* dismissal, involve the potential difficulties that would arise from this Court's application of the laws of the Province of Québec, pursuant to the arbitration, and to the choice-of-law clauses, in the General Contract. Indeed, Opron has suggested that it will move to enforce the arbitration clause, should this Motion to Dismiss be denied. *Def.'s Mem.* at 16. Aero Systems counters that neither of these clauses, from the General Contract, have been incorporated into the Purchase Order which

governs the parties' contractual relationship and, seeing as how the contract was "made" in Minnesota, under the conflicts principles of the forum State, Minnesota law would govern.

For these purposes, we shall assume that the dispute resolution procedures of the General Contract are fully incorporated into the Purchase Order, by the latter's provision that "all work shall be carried out in accordance" with, among other Sections, the General Conditions and Supplementary General Conditions of the General Contract with Rolls Royce(Canada).[4] Given this assumption, Québec law would govern the interpretation of the Purchase Order, and the arbitration clause would apply to disputes, such as the instant action, that arises between Aero Systems and Opron. The possible legal complexities, that might result from this Court's application of the law of another jurisdiction, even one that is not within the United States, cannot overcome this State's "obvious interest in providing a local forum in which its residents may litigate claims against non-residents," *Northrup King, Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* supra at 1389, and the United States' "interest in the dispute and in seeing the plaintiff has a forum in this country." *Reid–Walen v. Hansen,* supra at 1400.

While "the need to apply foreign law favors dismissal * * * this factor alone is not sufficient to warrant dismissal when balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate."

3. We cannot accept Aero Systems' argument that the more restrictive discovery process, which is afforded in Québec, would weigh against the parties' private interests, under *Gilbert.* In support of this argument, it cites *Peabody Holding Co. v. Costain Group PLC,* 808 F.Supp. 1425, 1442–43 (E.D.Mo.1992). There, the Court found that the English Courts' more restrictive approach to the discovery process, among other things, was a factor that weighed against transfer. In addressing the plaintiff's argument, the Court noted "that England is not an adequate alternative forum because the procedures afforded plaintiffs would greatly differ." *Id.* at 1442. Differences in discovery, between Canadian and American Courts, goes to the issue of the adequacy of the alternative forum, and not to its convenience. In the milieu of adequacy, it is clear that a more restrictive view of documentary discovery

does not make the alternative forum "so clearly inadequate or unsatisfactory that it is no remedy at all * * *." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254–55, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In the context of ease of access to sources of proof, the argument is misplaced, as a forum's treatment of the discovery process is not a matter of logistical convenience, as contemplated by *Gilbert,* but relates to the parties' correlative obligations to share information—which would appear to cut both ways in terms of convenience.

4. The applicability of the arbitration and choice of law clauses need not be decided here, and should be preserved for consideration upon a Motion that squarely presents those issues to the Court.

*Piper Aircraft Co. v. Reyno,* supra at 260 n. 29, 102 S.Ct. 252 [citations omitted]; see also, *Gulf Oil Corp. v. Gilbert,* supra at 843, 67 S.Ct. 839 ("appropriateness * * * in having the trial of a * * * case in a forum that is at home with the * * * law that must govern the case"). While it is preferable for the Court, which decides the case, be the most familiar with the applicable law, "Federal courts are quite capable of applying foreign law when required to do so," and "'must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform.'" *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 345 (8th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984), quoting *Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2nd Cir. 1981).

Opron's overall argument in favor of dismissal urges that the arbitration clause is plainly enforceable against Aero Systems, and will require a dismissal in favor of arbitration, and that applying the laws of Québec to this matter will be wrought with complexity. Nevertheless, we agree with Aero Systems, that Opron presents an argument divided against itself. When read closely, Opron's argument rests upon the conclusion that, "[t]o avoid problems with conflicts in the law and in the need to apply unfamiliar foreign law, this Court should decline to exercise its jurisdiction over the parties." *Def.'s Mem.* at 18. The argument continues by contending that this Court would need to decide whether Aero Systems' insistence, on the inapplicability of the General Contract's provisions, "has any basis in Quebec's law, and, if so, whether Quebec or Minnesota law should apply." *Def.'s Reply Mem.* at 9. Of course, a Canadian Court would need to engage in a similar analysis. More significantly, Opron does not inform the Court of what specific difficulties would be encountered in applying the foreign law, or even where the laws of the two jurisdictions would differ. Certainly, there is some force behind Opron's argument in favor of dismissal, but the prospect of applying foreign law is not dispositive and, without more than a conclusory suggestion that it would present a "thorny" issue, we do not afford it more weight than Aero

System's legitimate choice of forum, or the forum's legitimate interest in the litigation.

The other public interest factors do not weigh in favor of either party. No evidence has been presented that docket congestion differs between the two Court systems. Additionally, as both Québec and Minnesota have a legitimate interest in this action, it would not be equally unfair to burden citizens in either jurisdiction with jury duty. Despite the potential that this Court would need to apply the law of a foreign jurisdiction, it is a function of which we are capable, and it does not overcome the other public interest factors which weigh against dismissal.

In the final analysis, we cannot agree with Opron that this case is so "immutably Canadian" that a *forum non conveniens* dismissal is appropriate. This case is not, as Opron suggests, analogous to either *Piper Aircraft Co. v. Reyno,* or *Polanco v. H.B. Fuller Co.* Those cases involved claims, by citizens of other countries, arising from accidents that occurred in foreign jurisdictions, over which the plaintiffs' selected forum had an "incremental" interest. See, *Piper Aircraft Co. v. Reyno,* supra at 260–61, 102 S.Ct. 252; *Polanco v. H.B. Fuller Co.,* supra at 1529. Here, as the contract was negotiated—at least in part—in Minnesota, and Aero Systems, a Minnesota corporation, performed the design work at issue in this State, Aero System's choice of forum, and this forum's interest in the subject matter of litigation, are entitled to great weight, that we have no occasion to disturb.

Accordingly, we recommend that the Motion to Dismiss, on the ground of *forum non conveniens,* be denied.

NOW, THEREFORE, It is—

RECOMMENDED:

That the Defendant's Motion to Dismiss [Docket No. 6] be denied.

June 29, 1998.

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon

all parties by no later than July 17, 1998, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than July 17, 1998, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.