**NORTHRUP KING CO.,**
**Plaintiff–Appellee,**

v.

**COMPANIA PRODUCTORA SEMILLAS ALGODONERAS SELECTAS, S.A., also known as C.O.P.S.A., a Spanish corporation, Defendant–Appellant.**

No. 94–1848.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1994.

Decided April 13, 1995.

Robert Arthur Brunig, Minneapolis, MN, argued (George V. Egge, Jr., on the brief), for appellant.

Paula D. Osborn, Minneapolis, MN, argued (Edward J. Hayward and Michael J. Bleck, on the brief), for appellee.

Before BEAM, Circuit Judge,
FRIEDMAN * Senior Circuit Judge, and
JOHN R. GIBSON, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

Compania Productora Semillas Algodoneras Selectas, S.A. (COPSA), appeals a default judgment against it, entered in favor of the appellee Northrup Company by the United States District Court for the District of Minnesota.** COPSA, a Spanish corporation, contends that the district court erred in denying its motion to dismiss for lack of personal jurisdiction and for insufficiency of process and service of process. We affirm.

## I.

As we explain in part II, in reviewing the district court's refusal to dismiss we view the factual allegations most favorably to Northrup King, resolve all conflict of evidence in its favor, and draw all reasonable inferences from the evidence. The following statement of the facts reflects these standards.

A. The underlying dispute is a breach of contract action that arises from Northrup King's sale and shipment of cottonseed to COPSA in 1990 and COPSA's refusal to pay for it.

Northrup King is a Delaware corporation with its principal place of business in Minnesota, engaged in breeding, marketing, and selling agricultural seeds. In July 1988, Northrup King purchased certain assets from Coker's Pedigreed Seed Co. of South Carolina, including several varieties of Coker brand cottonseed.

COPSA is a Spanish corporation with its principal place of business in Seville, Spain, engaged in buying and reselling cottonseed in Spain. For 25 years before the Coker sale to Northrup, COPSA purchased from Coker and distributed Coker seeds in Spain.

In the fall of 1988, COPSA and Northrup King began discussions regarding the continued sale of Coker seeds by Northrup King to COPSA. In September 1988, COPSA's president and vice president went to Minnesota and discussed with Northrup King officials Spanish cottonseed sales. The COPSA executives spent several days with Northrup King's personnel and toured its facilities. In February 1989, COPSA's president and vice president, and in April 1989, COPSA's vice president, again visited Minnesota and discussed all aspects of their relationship. These meetings addressed "crop availability and condition, COPSA's cottonseed requirements, order quantities for COPSA, the possibility of a joint research project between COPSA and Northrup King, and joint marketing activities between Northrup King and COPSA."

In December 1989, COPSA and Northrup King began discussion of COPSA's cottonseed order for the following growing season. The parties communicated by fax, and COPSA sent a number of faxes to Minnesota. On December 21, 1989, COPSA sent by fax to Northrup King in Minnesota an order for 717

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

** Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

metric tons of four different Coker seed varieties. On January 8, 1990, COPSA sent by fax a letter specifying its tagging and germination rate requirements and expressing concern regarding the urgency of delivery. The next day COPSA sent another letter by fax about the importance of prompt delivery. On January 17, 1990, COPSA faxed an additional order for 120 metric tons and asked Northrup King "if you have more." On January 22, 1990, COPSA by fax requested an invoice and asked about the availability of other Coker seed varieties. On February 5, 1990 it sent another fax requesting quick delivery. COPSA received the cottonseed in late February and early March. It was grown, tested, processed, and bagged in Alabama and Texas, and shipped from Alabama and Texas through Charleston and Houston.

On March 1, COPSA sent by mail letters about problems with the germination rates of the seeds that its laboratory tests had raised. Over the next 15 months, COPSA sent numerous faxes and letters to Minnesota regarding the problem and trying to solve it. The parties were unable to resolve the dispute.

B. When COPSA did not pay for the cotton, Northrup King commenced this action for $1,335,260.70 plus interest. On the day of filing, Northrup King's attorneys and a deputy clerk of district court signed a document entitled "Request for Service Abroad of Judicial and Extrajudicial Documents." Pursuant to Article 3 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, February 10, 1969, 70 UST 361 ("Hague Convention"), Northrup King forwarded the document to the Spanish Ministry of Justice, with two copies of the summons and complaint, a Spanish language translation of the complaint and a "Summary" of the documents to be served. On receipt of these documents, the Ministry of Justice transmitted them to the court in Seville pursuant to the "Convention Relative to the Notification or Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters entered into at the Hague on November 15, 1965."

Two Seville court officials went to COPSA's offices in Seville. Rosalia Rodriguez, who identified herself as an employee of COPSA, was present. They left a copy of the summons (in English) and copies of the complaint (in English and Spanish) with Ms. Rodriguez, after she refused to sign for the documents.

The same day the court officials executed a Certificate of Service, which stated that the "documents referred to in the request ha[d] been delivered to Rosalia Rodriguez, rep. legal." They sent the certificate to the Ministry of Justice, which stamped it and mailed it and other documents to the United States District Court for the District of Minnesota. The cover letter stated that the documents had been transmitted to COPSA. Northrup King also concurrently served COPSA by international air mail, pursuant to Article 10(a) of the Hague Convention.

C. COPSA "appear[ed] specially in the district court and move[d] to dismiss" on the grounds that (1) "the court lack[ed] jurisdiction over the person of" COPSA; (2) there was "insufficiency of process;" (3) there was "insufficiency of service of process;" and (4) "venue [was] inconvenient." After hearing argument, the district court denied COPSA's motion to dismiss. In its written opinion the court held that "Northrup King had made the requisite prima facie showing of sufficient minimum contacts to allow assertion of personal jurisdiction over the defendant ... Of particular significance is the fact that the transactions at issue are directly related to and essentially arose from COPSA's contacts with the forum state." The court also held that "Plaintiff has established a prima facie case of valid service in compliance with ... the Hague Convention." The court reserved the possibility of revisiting the sufficiency and service of process after receipt of the certificate of service that Article 6 of the Convention required.

COPSA failed to answer Northrup King's complaint and Northrup King moved for entry of default judgment. In opposing the motion, COPSA reargued the issues its motion to dismiss had raised. The court refused to address those issues except for issues raised by the certificate of service,

which the court had received since granting the motion to dismiss. The court held that the process and service of process satisfied the requirements of the Hague Convention. The court entered a default judgment in favor of Northrup King against COPSA for $1,922,700.75.

## II.

■ The district court decided COPSA's motion to dismiss on the basis of Northrup King's pleadings and affidavits. Although Northrup King bore the ultimate burden of establishing at trial by a preponderance of the evidence personal jurisdiction and sufficiency and service of process, at that point it was required to establish only a prima facie case. *Dakota Indus. v. Dakota Sportswear,* 946 F.2d 1384, 1387 (8th Cir.1991); *FDIC v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992). We review de novo the district court's determination that Northrup King presented a prima facie case of personal jurisdiction and of sufficient process and service thereof. *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992).

■ In seeking reconsideration of the denial of its motion to dismiss, COPSA presented additional material, some of which it relies on in this court. The issue before the district court when it decided the motion to dismiss was whether the material that Northrup King had submitted in opposition to that motion established a prima facie case of jurisdiction. If COPSA had additional evidence to refute that prima facie showing, it could have forced Northrup King to prove its case on those elements by going to trial. Instead, COPSA permitted a default judgment to be entered against it by failing to answer the complaint. In reviewing the district court's decision, we cannot properly consider any evidence that was not before that court when it initially denied the motion to dismiss.

## III.

■ The determination whether a court has personal jurisdiction over a non-resident

defendant involves "a two-step analysis." *Wines v. Lake Havasu Boat Mfg.,* 846 F.2d 40, 42 (8th Cir.1988). First, the applicable state long-arm statute, here Minn.Stat. § 543.19, must be satisfied. *Id.* Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment. *Id.* Because Minnesota courts have concluded that if a non-resident's contacts with that State satisfy due process, the Minnesota long-arm statute also is satisfied and because we hold that the district court's assumption of jurisdiction over COPSA satisfies due process, we need not address the long-arm statute issue. *See Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 410 (Minn.1992).

■ Due process allows a court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice, *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and if the defendant has sufficient "minimum contacts" with the forum state, *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The contacts with the forum state are sufficient if the non-resident defendant "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567, because it has performed " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The inquiry is whether the non-resident defendant "has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (citations omitted).

■ This court considers five factors in determining whether a district court's exercise of jurisdiction over a non-resident defen-

dant is consistent with due process: [1] "the nature and quality of defendant's contacts with the forum state; [2] quantity of contacts; [3] source and connection of the cause of action with those contacts; and, to a lesser degree, [4] the interest of the forum state in providing a forum for its residents; and [5] the convenience of the parties." *Gould v. P.T. Krakatau Steel,* 957 F.2d at 576; *Land–O–Nod Co. v. Bassett Furniture Indus.,* 708 F.2d 1338, 1340 (8th Cir.1983). The latter two issues are "secondary factors" in the inquiry. *Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1210 n. 5 (8th Cir.1977)." Because the first three factors are closely interrelated, we consider them together.

■ Over an 8–month period, the president of COPSA went twice to Minnesota and the vice president three times to discuss COPSA's business relations and dealings with Northrup King. The meetings were extensive, and on one occasion COPSA's officers visited Northrup King's production facilities in that state. COPSA had been buying substantial quantities of cottonseed from Coker for a quarter of a century. It is a reasonable inference that when COPSA's top officers met with Northrup King in Minnesota a few months after Northrup King had purchased the Coker seed business, it was in the hope and for the purpose of continuing the sales of Coker seed to COPSA.

Following these meetings, there was extensive written communication between COPSA and Northrup King in Minnesota relating to a proposed sale of cottonseeds by Northrup King to COPSA. These communications, mostly by fax to Minnesota, dealt with various details of the proposed sale. After the first meeting, COPSA in December 1989 submitted to Northrup King in Minnesota an order for a substantial amount of Coker seed and the following month ordered an additional quantity. In December 1989 and January 1990 Coker sent seven separate communications relating to the purchase of the seed to Northrup King in Minnesota. In addition, in the 14–month period beginning March 1990, COPSA sent to Minnesota approximately 20 other letters, that dealt with the alleged deficiencies in the seed Northrup

King had shipped, and possible bases for settling the dispute.

■ COPSA wrongly attempts to treat each category of these numerous and significant communications separately. For example, although COPSA correctly notes that letters and faxes alone do not establish personal jurisdiction, *see, e.g., Mountaire Feeds Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 652 (8th Cir.1982), in conjunction with other contacts they may support the exercise of personal jurisdiction, *Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). In determining whether there is personal jurisdiction, the courts consider the defendant's contacts with the forum in the aggregate, not individually; they look at the totality of the circumstances. *Hendrickson v. Reg O Co.,* 657 F.2d 9, 12 (3rd Cir.1981) ("It is the totality of defendant's connections with the forum state that must be considered."); *Bigelow–Sanford, Inc. v. Gunny Corp.,* 649 F.2d 1060, 1063 (5th Cir.1981) (court looks at relevant contacts in the "totality of circumstances" rather than whether "each standing alone would have been sufficient to sustain jurisdiction").

The contacts between COPSA and Northrup King in Minnesota were numerous and significant and extended over a substantial time. Although COPSA contends that the meetings in Minnesota and some of the letters had nothing to do with the subject matter of this litigation—COPSA's refusal to pay for the seeds Northrup King had shipped to it—they were an essential part of the course of dealing between the two companies that resulted in the sales of seed. The contacts were not "random," "fortuitous," or "isolated," *see Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), or no more than "[t]he unilateral activity of those who claim some relationship with a nonresident defendant." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Instead, they show that COPSA "purposefully avail[ed] itself of the privilege of conducting activities within," *id.,* Minnesota by seeking

out Northrup King in Minnesota, endeavoring to foster a continuation of the business relationship that COPSA enjoyed with the previous owner of Coker seeds, including the purchase of seeds, and carrying out the transaction.

 The two secondary factors—the interest of Minnesota in having the case tried there and the convenience of the parties—also support jurisdiction. Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents. The convenience of the parties slightly favors jurisdiction. A plaintiff normally is entitled to select the forum in which it will litigate. Some of the witnesses and documentary evidence are located in the United States and others in Spain. Whatever inconvenience COPSA might undergo by being required to litigate in the United States is equalled by the inconvenience Northrup King would undergo by being forced to litigate in Spain. COPSA was no stranger to the United States, having done business with Coker there for 25 years.

In short, the district court's assertion of jurisdiction over COPSA in this case did not violate due process.

### IV.

The Hague Convention provides for service from abroad through a "Central Authority." Hague Convention, art. 2. Each state's Central Authority is designated to receive judicial documents from parties abroad. *Id.* The Convention states that the "authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention." *Id.* art. 3. The annexed model specifies forms for a "Request for Service Abroad of Judicial or Extrajudicial Documents," a "Certificate" of service on the reverse of the request, a "Summary of the Document to be Served," and a cover sheet for the documents. The Central Authority checks the documents for compliance with the Convention, serves them in accordance with its own law (or by a method requested by the sender that complies with the state's law—an option

that Northrup King did not pursue), and returns to the party requesting service a certificate that the documents have been served. *Id.,* arts. 4, 5, 6.

As required by Article 3, Northrup King forwarded to the Spanish Central Authority a "request For Service Abroad," a "Certificate," a "Summary," two copies of a Summons and Complaint, and a Spanish translation of the complaint. Pursuant to Article 6, the Spanish Central Authority returned a certificate that stated that the documents referred to in Northrup King's request (the summons, complaint and summary) had been served on September 10, 1993, by personal delivery on Rosalia Rodriguez, "rep. legal."

 A. COPSA contends that the documents with which it was served did not comply with the Convention. The Spanish Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service on COPSA was made in compliance with the Convention. As in the case of COPSA's contention that the Central Authority's service did not comply with Spanish law, which we discuss in part II B below, COPSA does not contend that it lacked actual notice of the proceedings or that the alleged technical deficiencies prejudiced it in any way.

 COPSA's arguments regarding translation and the need for the original summons rest upon a misreading of the Convention and our case law. With regard to translation, the Convention states only that "the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed," art. 5, not that it must impose that requirement. There is no indication that Spain requires translation of the summons, and the Central Authority's lack of objection indicates that it does not. See part IV B below. *Bankston v. Toyota Motor Corp.,* 889 F.2d 172 (8th Cir.1989), which COPSA cites, is irrelevant here, because it did not address translation. The court's holding was that "sending a copy of a summons and complaint registered mail is not a method of service of process permitted by the Hague Convention." *Id.* at 174.

With regard to the failure to serve the original summons, the Convention states that the "document to be served or a copy thereof shall be annexed to the request." Art. 3. Finally, with regard to the Central Authority's alleged failure to serve a "Summary," the Central Authority's return of the completed certificate indicates that the documents that Northrup King forwarded, which included the "Summary," were served upon COPSA. For the reasons given in part II B below, we decline to go behind that certificate. In any event, COPSA makes no showing, and does not even claim, that the alleged failure to serve it with a "Summary" prejudiced it in any way.

B. COPSA further contends that service of process was improper because the Central Authority did not comply with Spanish procedural law.

The Spanish Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service on COPSA was made in compliance with Spanish law. The Convention requires that the Central Authority serve the documents by a method specified by its own law or by the sender that complies with local law and reserves to the Central Authority the right to object to documents if they do not comply with the Convention. By not objecting to the documents and by certifying service the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as Spanish law required. We decline to look behind the certificate of service to adjudicate the issues of Spanish procedural law that the parties have raised through their submission of conflicting expert statements on the issue.

C. We therefore hold that Northrup King presented a prima facie case that process had been served upon COPSA in Spain in accordance with the Hague Convention. That holding makes it unnecessary to consider whether Northrup King's service upon COPSA by airmail satisfied the requirements of Article 10 of the Hague Convention, which in certain circumstances permits direct mail service of legal documents.

## V.

 Finally, COPSA contends that the district court should have dismissed the case pursuant to the doctrine of forum non conveniens. "The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens." *Reid–Walen v. Hansen*, 933 F.2d 1390, 1993 (8th Cir.1991). COPSA makes only conclusory assertions regarding this issue; it does not point to any evidence in the record that the district court failed to consider. The district court did not abuse its discretion in declining to dismiss on this ground.

## CONCLUSION

The default judgment of the district court awarding Northrup King $1,922,700 is affirmed.