INTERNATIONAL ADMINISTRATORS, INC., Plaintiff,

v.

Greg PETTIGREW, Albert White III, and Triune Resources, Inc., Defendants.

No. 4:06–CV–00108.

United States District Court, S.D. Iowa, Central Division.

May 12, 2006.

Michael S. Jones, Patterson Lorentzen Duffield Timmons, Des Moines, IA, for Defendants.

## ORDER

ROBERT W. PRATT, Chief District Judge.

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer for Improper Venue (Clerk's No. 2). Plaintiff resisted the Motion (Clerk's No. 6) and a hearing was held on the matter on May 4, 2006. The matter is fully submitted.

## I. FACTUAL BACKGROUND

Plaintiff International Administrators, Inc. ("IAC") is an Iowa corporation, with its principal place of business in Des Moines, Iowa, and is owned by Frank De-Marco ("DeMarco"). Defendant Triune Resources ("Triune") is a Texas corporation, with its principal place of business in Texas, and was owned by Greg Pettigrew ("Pettigrew") and Albert White III ("White"), both citizens of Texas. Pettigrew and White acted, respectively, as the Vice President and President of Triune. The amount in controversy exceeds $75,000, exclusive of costs and interest, making diversity jurisdiction proper under 28 U.S.C. § 1332.

According to Plaintiff's Resistance Brief and Complaint, filed originally in Polk County, Iowa, but removed to federal court on March 16, 2006, Triune is a third-party administration business. In early 2005, DeMarco discovered, through a third-party broker, that Pettigrew and White were seeking to sell the primary assets of Triune. DeMarco expressed his interest in purchasing the assets of Triune to the third-party broker and, shortly thereafter, was contacted by Pettigrew to

Andrew C. Johnson, Todd A. Strother, Bradshaw Fowler Proctor Fairgrave PC, Des Moines, IA, for Plaintiff.

discuss the matter. DeMarco claims that both Pettigrew and White phoned him in Iowa several times to discuss the sale of Triune and to negotiate a sale. Ultimately, Pettigrew and White traveled to Iowa and met with DeMarco regarding the purchase. DeMarco characterizes this meeting as a "sales presentation, whereby Pettigrew and White undertook to induce DeMarco (on behalf of IAC) to purchase the assets." Resistance at 3. DeMarco claims that the parties reached a general oral agreement regarding IAC's purchase of Triune's assets, and on May 5, 2005, DeMarco traveled to Texas to sign a written agreement on the matter. DeMarco claims that he relied on representations made by Pettigrew and White throughout the negotiation process in reaching a decision to purchase Triune's assets. DeMarco, on behalf of IAC, now asserts that many of these representations by Pettigrew and White were false, and that the agreement between the parties has been breached. Thus, IAC seeks to hold Defendants liable for Breach of Contract (Written and Oral) and Fraudulent Inducement.

Defendants filed the present motion, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), claiming that this Court lacks personal jurisdiction over the Defendants. Should the Court find that personal jurisdiction exists, Defendants seek a ruling that Iowa is the improper venue for this action under 28 U.S.C. § 1391(a), or alternatively, that Texas is a sufficiently more convenient forum, such that the case should be transferred under 28 U.S.C. § 1404(a).

In support of their motion, Defendants assert that Triune is a Texas corporation, with its only offices, corporate or otherwise, in Texas. Triune is licensed only in Texas, and has never engaged in business in Iowa. The written contract memorializ-ing the sale of Triune's assets was signed in Texas. All clients of Triune are located in Texas, all of the assets transferred under the written sales agreement are located in Texas, and all payments by IAC were received in Texas. Pettigrew is a licensed insurance agent in Texas. Neither he nor White have ever personally engaged in business in Iowa. Neither White nor Pettigrew own any real estate in Iowa, or have any other traditional contacts with the state. Their only contacts with Iowa stem from the negotiations for the sale of Triune, and arose "within the scope of [their] employment with Triune." Pettigrew Aff., Clerk's No. 2.3 at 2; White Aff., Clerk's No. 2.4 at 2.

## II. LAW AND ANALYSIS

### A. *Personal Jurisdiction*

"While it is true that the plaintiff bears the ultimate burden of proof on [the issue of personal jurisdiction], jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991) (citing *CutCo Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986)). Prior to the hearing on May 4, 2006, IAC filed an objection to Defendants' request for evidentiary hearing and a motion for leave to conduct jurisdictional discovery. Clerk's No. 8. According to IAC, it was unaware of Defendants' intent to hold a full-blown evidentiary hearing until May 3, 2006, when Defendants' counsel informed Plaintiff's counsel that Pettigrew would be present to testify at the hearing. The Court proceeded with the hearing on May 4, heard oral objections from IAC, but permitted Pettigrew to testify. In light of the fact that IAC was unable to present any evidence in support of its claim of personal jurisdiction over the Defendants, the Court declines to find that

the May 4 hearing was evidentiary. Thus, to survive the present motion to dismiss for lack of personal jurisdiction, IAC need only make a prima facie showing of personal jurisdiction over Defendants. *See e.g., Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir.1995); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994); *Watlow Elec. Mfg. Co. v. Patch Rubber Co.,* 838 F.2d 999, 1000 (8th Cir.1988). In evaluating whether IAC has made such a showing, the Court must view the evidence in the light most favorable to IAC and resolve all factual conflicts in IAC's favor. *See Dakota Indus., Inc.,* 946 F.2d at 1387 ("If the district court does not hold a hearing and instead relies on pleadings and affidavits, as it did here, the court must look at the facts in the light most favorable to the nonmoving party.").

To determine whether it has personal jurisdiction over a non-resident defendant, this Court is guided by two primary rules. First, the facts presented must satisfy the requirements of the state's long-arm statute. *See Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 225 (8th Cir.1987). If the activities of the non-resident defendant pass the first level of analysis, the Court must then consider whether the exercise of personal jurisdiction complies with the requirements of constitutional due process. *See Northrup King,* 51 F.3d at 1387; *Dakota Indus., Inc.,* 946 F.2d at 1388. "Because personal jurisdiction in Iowa reaches to the fullest extent permitted by the Constitution," however, this Court "need only exist." *Hicklin Eng., Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir.1992) (per curiam) (citing *Newton Mfg. Co. v. Biogenetics, Ltd.,* 461 N.W.2d 472, 474 (Iowa App.1990)); *see also Republic Credit Corp. I v. Rance,* 172 F.Supp.2d 1178 (S.D.Iowa 2001) ("[B]ecause personal jurisdiction in Iowa is coterminous with

the constitutional reach of due process, the two level inquiry collapses into one.").

Due process mandates that personal jurisdiction exists only if a defendant has sufficient "minimum contacts" with the forum state, such that summoning the defendant to the forum state would not offend " 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). To maintain personal jurisdiction, a defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Rather, sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In evaluating a defendant's reasonable anticipation, there must be " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Jurisdiction is proper, therefore, where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum state. *Id.; World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

In addition to the basic principles of due process, the Court evaluates five factors in analyzing the constitutional requirements needed to sustain personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of con-

tacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1432 (8th Cir.1995); *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1215 (8th Cir.1977). The first three factors are considered to be primary, with the third factor distinguishing whether jurisdiction is specific or general.[1] *See Wessels,* 65 F.3d at 1432 n. 4. The latter two factors are considered "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.,* 63 F.3d 694, 697 (8th Cir.1995); *Northrup King,* 51 F.3d at 1388.

### 1. *The nature and quality of Defendants' contacts with Iowa.*

■■■ As a general rule, the mere fact that a non-resident enters into a contract with a resident of the forum state is not sufficient to give the courts therein personal jurisdiction over the non-resident. *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174. Here, Defendants Pettigrew and White, as owners and agents of Triune, intentionally initiated contact with the Plaintiff,[2] as owner of IAC, in Iowa. Numerous phone calls were made to Iowa, eventually culminating in Pettigrew and White traveling to Iowa to further negotiate and consummate a contract for the sale of Triune's assets.

■■■ The Eighth Circuit has identified interstate facilities, such as telephone and mail, as "secondary or ancillary" factors which "cannot alone provide the minimum contacts required by due process." *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 923 (8th Cir.1995) (citing *Scullin Steel Co. v. National Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982); *Mountaire Feeds Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 655–56 (8th Cir.1982)). Nonetheless, such contacts are to be considered in conjunction with other contacts that may support personal jurisdiction. *Northrup King,* 51 F.3d at 1388 (citing *Grand Entm't Group v. Star Media Sales,* 988 F.2d 476, 482 (3d Cir.1993)) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."); *Bigelow–Sanford, Inc. v. Gunny Corp.,* 649 F.2d 1060, 1063 (5th Cir.1981) ("[C]ourt looks at relevant contacts in the 'totality of circumstances' rather than whether 'each standing alone would have been sufficient to sustain jurisdiction.' "). Indeed, the Eighth Circuit has specifically approved consideration of business contacts in the course of contract negotiations by mail, telephone and fax. *See Northrup King,* 51 F.3d at 1388 (finding personal jurisdiction, in part, based on the defendant's written and faxed communications in arranging a sales contract). Although each situation must be considered on its own facts, guidance may be taken from decisions in other courts. For

---

1. "It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citation omitted). "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Id.* at n. 9 (citations omitted).

2. Pettigrew testified that it was actually De-Marco that initiated contact. For the purposes of a prima facie analysis of personal jurisdiction, however, the Court assumes the facts as alleged in the Complaint are true.

example, numerous courts, including the Eighth Circuit, have found specific jurisdiction when non-resident defendants negotiate the terms of the contract that gives rise to the cause of action in the forum state. *See e.g., Minn. Mining,* 63 F.3d at 698 (8th Cir.1995) (finding personal jurisdiction when "the defendant's activities in Minnesota were directed toward the consummation of the contract," and where that specific contract formed the basis of the plaintiff's lawsuit); *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C. V.,* 28 F.3d 572 (7th Cir.1994) (holding that the district court properly exercised jurisdiction over a defendant foreign corporation where the defendant's only contact with the forum was the visit by its president to negotiate a contract); *Carter-et Sav. Bank v. Shushan,* 954 F.2d 141, 147–48 (3d Cir.1992) (specific jurisdiction found when cause of action was misrepresentations made at in-forum meeting); *Nat'l Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 647 (S.D.N.Y.1994) (single instate meeting was sufficient to grant specific jurisdiction over non-resident defendant when the meeting was "essential to formation of the contract at the heart of this action"); *Stop–A–Flat Corp. v. Electra Start of Mich., Inc.,* 507 F.Supp. 647, 651 (E.D.Pa.1981) (personal jurisdiction over corporate defendant found "based on the undisputed fact that the president of Electra–Start visited Pennsylvania at least once for the express purpose of negotiating the contract which is at dispute in this action"); *M.L. Byers, Inc. v. HRG Prod., Inc.,* 492 F.Supp. 827 (S.D.N.Y.1980) (finding fact that officials of defendant corporation spent three days negotiating in the forum state constituted purposeful activities which significantly advanced the making of the contract at issue even though agreement was not reached in the forum). Accordingly, the Court finds that this fac-

tor weighs in favor of the exercise of personal jurisdiction over Defendants.

2. *The quantity of Defendants' contacts with Iowa.*

 It is well-established that specific jurisdiction can arise from a single contact with the forum state. *R.H. Fulton v. Chicago, Rock Island & Pac. R.R. Co.,* 481 F.2d 326, 334–36 (8th Cir.1973); *see also Burger King Corp.,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174 (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). Thus, when specific jurisdiction is being alleged, the quantity of contacts is not determinative. *See Lakin v. Prudential Secs., Inc.,* 348 F.3d 704, 711 n. 10 (8th Cir.2003) (noting that quantity of contacts, nature and quality of contacts, and connection of those contacts to the cause of action are the three primary factors to be considered in the determination of personal jurisdiction, but stating that "in a specific jurisdiction case, we will consider the last two of the primary factors . . . ."). In any case, the telephone calls to Iowa, as well as Pettigrew's and White's personal visit to Iowa, weigh in favor of the exercise of personal jurisdiction.

3. *The relation of the cause of action to Defendants' contacts.*

 The third factor in the analysis distinguishes general jurisdiction from specific jurisdiction. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996). As noted, *supra,* specific jurisdiction refers to the state's assertion of personal jurisdiction over a defendant in instances where the defendant has purposely directed its activities at forum residents, and litigation results from injuries arising out of, or relating to, those

activities. *See id.; Wessels,* 65 F.3d at 1432 n. 4. Here, Plaintiff's Complaint alleges that Pettigrew and White, as agents for Triune, made numerous phone calls to IAC in an attempt to get it to purchase Triune. Plaintiff also asserts that Pettigrew and White made certain representations while physically present in Iowa, which later proved to be false, that IAC relied on in entering into the written contract. Moreover, Plaintiff alleges that certain agreements were made in Iowa that amounted to an oral contract, or that such agreements were intended by the parties to be construed in conjunction with the written agreement, or as a modification of the written agreement. Since Plaintiff's cause of action arises from the breach of these alleged oral agreements, and from the allegedly fraudulent representations made by Pettigrew and White while in Iowa that eventually culminated in the written contract, it seems clear that Defendants' contacts with Plaintiff in Iowa give rise to a substantial basis of Plaintiff's claims. This factor, therefore, weighs in favor of the exercise of personal jurisdiction.

### 4. *The interest of Iowa in providing a forum for its residents.*

■ There can be little doubt that Iowa has an interest in adjudicating Plaintiff's claims and providing a forum for its residents. Accordingly, the fourth factor weighs in favor of the exercise of specific personal jurisdiction over Defendants. *See Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir.1997) (summarily concluding that this portion of the test weighed in favor of jurisdiction by assuming the forum state has an interest in providing a forum for its residents).

### 5. *The convenience of the parties.*

■ The final factor to be considered is the convenience of the parties.

While normally a plaintiff is entitled to choose the forum in which to litigate a case, the Court is mindful that litigation between citizens of different states will virtually always result in an inconvenience to one party or the other. *See Northrup King,* 51 F.3d 1383 at 1389. Accordingly, the Court concludes that this factor does not weigh in favor of either party.

Having considered the relevant factors, the Court concludes that, as a prima facie matter, the exercise of specific personal jurisdiction over the Defendants in this action comports with due process and does not offend traditional notions of fair play and substantial justice.

### B. *Fiduciary Shield Doctrine*

■ Defendants contend that this Court should decline to exercise jurisdiction over Pettigrew and White on the basis of the fiduciary shield doctrine. This doctrine is exclusively a creation of state law, and numerous federal courts have declined to consider its applicability when the state's long-arm statute is coterminous with the full reach of due process. *See Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (declining to consider the fiduciary shield defense and noting: "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually."); *see also Davis v. Metro Prods., Inc.,* 885 F.2d 515, 522 (9th Cir.1989) (noting that assertion of personal jurisdiction is appropriate, despite the fiduciary shield doctrine, so long as court finds that each defendant has sufficient minimum contacts); *Charter Commc'ns VI, LLC v. Eleazer,* 398 F.Supp.2d 502, 505 (S.D.W.Va.2005) (finding fiduciary shield doctrine unavailable

because the state's long-arm statute is coextensive with the due process clause of the federal constitution).

 While certainly an individual's contact with a forum exclusively as a corporate officer or agent cannot, standing alone, give rise to jurisdiction over that person in an individual capacity, *see Ark. Rice Growers v. Alchemy Indus., Inc.,* 797 F.2d 565, 574 (8th Cir.1986), Supreme Court jurisprudence has made clear that this means only that the contacts of each defendant must be assessed individually, not that one's corporate status automatically places that person beyond the court's jurisdiction. *See Calder,* 465 U.S. at 783, 104 S.Ct. 1482; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Moreover, where, as here, the corporation is nothing more than the alter ego of the individually named defendants, "courts attribute a corporation's contacts with the forum state to an individual defendant for jurisdictional purposes." *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Mgmt., Inc.,* 519 F.2d 634 (8th Cir.1975); *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642 (8th Cir. 2003) (applying same concept to parent and subsidiary corporations); *see also Stuart v. Spademan,* 772 F.2d 1185 (5th Cir.1985) (holding jurisdiction over individual defendants appropriate where there is "an unmistakable identity of interest between the defendant[s] and the corporation through which [they] act. . . ."). On these principles, the Court concludes that Pettigrew's and White's status as corporate agents of their closely-held corporation, Triune, cannot shield them from the exercise of personal jurisdiction, where the facts support a conclusion that such jurisdiction complies with the requirements of due process.

### C. *Forum Non Conveniens*

 Defendants next assert that, assuming jurisdiction is proper in Iowa, the Court should transfer the matter to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a). Section 1404(a), designed as a "federal housekeeping measure, allowing easy change of venue within a unified federal system," provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); 28 U.S.C. § 1404(a). The moving party has the burden of showing that the transfer will be to a more convenient forum. *Am. Standard, Inc. v. Bendix Corp.,* 487 F.Supp. 254, 261 (W.D.Mo.1980).

 In determining whether to exercise its discretion to transfer an action pursuant to § 1404, the Court may consider a myriad of factors, including the convenience of parties and witnesses, access to sources of proof and evidence, the governing law, and the possibility of delay if a transfer is granted. As well, the Court may consider practical factors, such as where the case can be tried more efficiently and expeditiously and whether any prejudice will result if a transfer is granted. *See Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688 (8th Cir.1997); *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 922 F.Supp. 1334 (N.D.Iowa 1996); *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923 (W.D.Mo.1985); *Stabler v. New York Times Co.,* 569 F.Supp. 1131 (S.D.Tex. 1983). The burden is upon the party seeking transfer to "make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the

moving party, the plaintiff's choice of forum should not be disturbed." *Houk,* 613 F.Supp. at 927 (citations omitted); *see also Shutte v. Armco Steel Corp.,* 431 F.2d 22 (3rd Cir.1970) (plaintiff's forum choice is to be given "paramount consideration").

### 1. *Convenience of the parties.*

■ There can be little doubt that litigation in Texas would be substantially more convenient for Defendants than litigation in an Iowa forum. Defendants have little to no ongoing contact with the State of Iowa and work and reside exclusively in Texas. Nonetheless, the mere fact that the costs of litigation would be more burdensome on Defendants than on Plaintiff should the case remain in Iowa is not alone sufficient cause to grant a transfer. *See Lajaunie v. L & M Bo–Truc Rental, Inc.,* 261 F.Supp.2d 751, 754 (S.D.Tex.2003) (concluding that shifting costs, rather than reducing them, does not support transfer). The Court, therefore, concludes that this factor does not weigh in favor of transfer.

### 2. *Convenience of witnesses.*

■ Defendants next argue that the convenience of potential Texas witnesses weighs heavily in favor of transfer. The convenience of non-party witnesses is generally considered to be one of the most important factors to be weighed in the venue transfer analysis. *See e.g. United States v. Hartbrodt,* 773 F.Supp. 1240, 1243 (S.D.Iowa 1991); *Am. Standard,* 487 F.Supp. at 262. The Defendants assert that crucial non-party witnesses will be in Texas, because the crux of Plaintiff's breach of contract claim is that Pettigrew failed to make reasonable efforts to retain clients of Triune, as provided in the par-

ties' agreement. There is no dispute that virtually all clients of Triune are in Texas. Defendants claim that numerous of these clients made the choice to leave Triune independently, and not because of a lack of service by Pettigrew, or because Triune was sold to an Iowa corporation. Thus, the testimony of these clients, believed to number approximately ten or eleven, according to Defendants, will be vital to defending the breach of contract claim. The Court agrees that such testimony is likely to be important and highly material in consideration of the breach of contract claim.

Plaintiff urges that the fact that necessary witnesses reside in Texas should not influence the analysis, as their testimony could easily be offered via depositions, video, or other means. Plaintiff cannot, however, dispute that Texas non-party witnesses are outside the subpoena power of this Court.[3] The availability of the compulsory process to insure the attendance of witnesses is a factor which district courts may consider. *See Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991). Moreover, Plaintiff cannot reasonably dispute that live witness testimony is highly preferable to deposition or other testimony. Accordingly, the Court finds that this factor weighs heavily in favor of transfer.

### 3. *General interests of justice and other considerations.*

■ Some courts have given weight to the location of the conduct and events giving rise to the cause of action. *Boyd v. Snyder,* 44 F.Supp.2d 966, 970 (N.D.Ill. 1999). This factor does not weigh either

---

**3.** This Court may serve a subpoena any place within the district or "at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, produc-

tion, or inspection specified in the subpoena...." Fed.R.Civ.P. 45(b)(2). Texas clearly falls outside of the 100 mile range this Court has at its disposal.

for or against transfer, as the allegedly false representations were made in Iowa, but the actual written contract governing the primary agreement of the parties was executed in Texas. Moreover, each party claims that the law of their respective jurisdiction will apply to the present action. Without determining the applicability of either Texas or Iowa law, it is clear that Texas courts are easily as capable of applying Iowa law as Iowa courts are capable of applying Texas law. Likewise, there is no evidence that the matter would be tried more efficiently or expeditiously in one jurisdiction versus the other. These factors, therefore, do not weigh either for or against transfer.

While the Court certainly gives deference to Plaintiff's choice of forum, it also recognizes that the only likely Iowa witness in this case is Frank DeMarco. All other witnesses are likely to be found in Texas, along with books, documents, and other sources of proof. Under the section 1404 analysis, therefore, the Court finds that the factors weigh generally in favor of transfer to Texas and that Texas would present a more convenient forum on the whole.

### III. CONCLUSION

After careful consideration, the Court concludes that a prima facie analysis of the personal jurisdiction question is appropriate at this juncture. Accordingly, Plaintiff's Objection to Defendants' Request for Evidentiary Hearing (Clerk's No. 8) is SUSTAINED. Defendant's Motion for Leave to Conduct Jurisdictional Discovery (Clerk's No. 8), however, is DENIED. Plaintiff has established a prima facie case that the exercise of specific personal jurisdiction over each named Defendant is proper. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Clerk's No. 2) is, therefore, DENIED. Defen-

dant's alternative Motion to Transfer Venue (Clerk's No. 2) is GRANTED. This matter shall be transferred to the United States District Court for the Northern District of Texas for further consideration.

IT IS SO ORDERED.