HIGGINBOTHAM, J.
|2A British corporation, Atlas Travel Insurance Services Limited, d/b/a Atlas Direct (“Atlas”), appeals a default judgment in a suit on open account for medical services rendered by a Louisiana hospital, NorthShore Regional Medical Center, L.L.C., d/b/a NorthShore Regional Medical Center (“NorthShore”).[1] The issue presented is whether the evidence introduced by NorthShore to confirm a default judgment against Atlas was sufficient to establish a prima facie case under Louisiana Code of Civil Procedure article 1702. *477 For the following reasons, we find that NorthShore failed to sustain its burden of proof for confirmation of the default judgment. Accordingly, we vacate the trial court judgment and remand this matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
On November 13, 2009, NorthShore instituted suit for the balance due on unpaid medical services. The named defendants were Brian and Edith Ruth Dill, citizens of the United Kingdom from Lancashire, England, the Dills’ alleged travel-health insurance carrier, Atlas, as well as the alleged medical claims administrator, a Canadian corporation, Global Excel Management, Inc. (“Global Excel”). The facts leading to the lawsuit arose when the Dills were vacationing in south Louisiana in mid-November 2006. Prior to their vacation, the Dills purchased a travel-health insurance policy through Atlas, with a coverage period of February 11, 2006, to January 11, 2007. While in Louisiana, Ms. Dill became extremely ill, was admitted for emergency surgery, and was hospitalized for further treatment at NorthShore. On November 15, 2006, through a series of facsimile communications, Global Excel acknowledged to NorthShore “on behalf of the underwriter” that Ms. Dill was covered “under a valid medical emergency policy” Uwith a “60% discount” benefit rate. Ms. Dill remained hospitalized at NorthShore for more than two months, until she was transported via air ambulance to a hospital in England on January 24, 2007. The final cost of Ms. Dill’s medical treatment at NorthShore was $1,256,229.08; North-Shore has received a partial payment of $309,498.31 toward the expenses. Because no other payments were made despite written demand, NorthShore filed suit for the balance due on open account for medical services rendered.
In a supplemental and amending petition, NorthShore added an Irish corporation, White Horse Insurance Ireland, Ltd. (“White Horse”), as a defendant, alleging White Horse underwrote the travel-health insurance policy purchased by the Dills. However, White Horse was dismissed from the litigation for lack of personal jurisdiction. In a previous appeal, this Court affirmed the dismissal of NorthShore’s claims against White Horse, without prejudice. NorthShore Regional Medical Center, L.L.C. v. Dill, 2011-2271 (La.App. 1st Cir.6/8/12), 94 So.3d 155, writ denied. 2012-1494 (La.10/8/12), 98 So.3d 862, (hereafter referred to as “NorthShore I ”). NorthShore filed another supplemental and amending petition, adding defendant, Inter Group Assistance Services, Ltd. (“Inter Group”), and alleging that Inter Group made coverage decisions and authorized the partial payment to NorthShore on behalf of White Horse and/or Atlas through Global Excel.
Currently, the record reflects that the following defendants remain in the lawsuit: the Dills, Atlas, Global Excel, and Inter Group. The Dills and Global Excel have both made appearances of record by filing answers and/or various exceptions; however, the record is void of any responsive pleadings filed on behalf of Atlas or Inter Group. The issues on appeal at this time only concern one defendant, Atlas, which disputes service of any and all pleadings.
RNorthShore attempted to comply with international treaty requirements for service abroad since service on Atlas was to be effected outside the United States in the United Kingdom of Great Britain, specifically in London, England. The United States and the United Kingdom are bound by the 1965 Hague Service Convention (“the Hague Convention”), so North-Shore’s attorney of record requested cita *478 tion and service of process on Atlas through the Clerk of Court for the 22nd Judicial District Court via the long-arm statute and pursuant to the requirements of Article 5 of the Hague Convention.[2] NorthShore’s counsel received confirmation in the form of a certificate, completed by the Senior Courts of England and Wales, Foreign Process Section, attesting that Atlas was served with NorthShore’s petition on January 14, 2010, pursuant to a January 12, 2010 High Court of Justice, Queen’s Bench Division Order granting permission for service on Atlas. Atlas, however, maintains that NorthShore did not strictly follow the mandates of the Hague Convention, and thus, it was never properly served.
Atlas does not dispute having knowledge of NorthShore’s lawsuit, but rather than filing responsive pleadings into the record, Atlas mailed two letters to NorthShore’s counsel, dated February 23, 2010, and March 3, 2010. The letters essentially requested that Atlas be removed as a defendant with an explanation that Atlas’s role was solely limited to the status of an insurance broker that sold travel insurance products on behalf of White Horse. NorthShore did not respond to Atlas’s request to be released, and shortly after White Horse was dismissed on jurisdictional grounds, NorthShore pursued a preliminary default against Atlas | .¡since the record showed that the time for filing responsive pleadings had passed and no answer or other opposition had been filed by Atlas. The trial court ordered a minute entry reflecting the preliminary default on August 8, 2011. NorthShore then filed a motion to confirm the default judgment against Atlas on August 26, 2011. After two separate hearings, the trial court signed a final default judgment on November 15, 2011, in favor of NorthShore and against Atlas in the amount of $753,737.45.
Atlas filed a motion and order for devol-utive appeal when it learned that a default judgment had been rendered against it.[3] The propriety of the default judgment is the subject of this appeal (Appeal No. 2012-0850, hereafter referred to as “NorthShore II ”). Additionally, Atlas filed a motion to annul the default judgment on the same day that it appealed the default judgment. The motion to annul was eventually denied by the trial court and is the subject of a separate appeal rendered this same date (Appeal No. 2012-1400, hereafter referred to as “NorthShore III ”).[4] In this appeal, Atlas contends that *479 the trial court erred in confirming the default judgment, in that: (1) Atlas was never properly served with process and never waived objection to jurisdiction, and (2)NorthShore failed to sufficiently establish prima facie proof that Atlas was the insurer responsible for Ms. Dill’s medical expenses incurred at NorthShore.
STANDARD OF REVIEW
When reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment. | Arias v. Stolthaven New Orleans, LLC, 2008-1111 (La.5/5/09), 9 So.3d 815, 818. This determination is governed by the manifest error standard of review. Id.
LAW AND ANALYSIS

Requirements for a Default Judgment

Louisiana Code of Civil Procedure Article 1701(A) provides that “[i]f a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him.” Thereafter, the default judgment may be confirmed according to the requirements provided, in pertinent part, by La.Code Civ. P. art. 1702:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima fa-cie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default....
B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
[[Image here]]
(3)When the sum due is on an open account ... an affidavit of the correctness thereof shall be prima facie proof....
C.In those proceedings in which the sum due is on an open account ... or other conventional obligation ... a hearing in open court shall not be required unless the judge, in his discretion, directs that such a hearing be held....
(Emphasis and italics added.)
Louisiana Code of Civil Procedure Article 1702.1(A) requires a plaintiff seeking to confirm a default judgment, when the sum is due on open account, to include “along with any proof required by law, ... a certification that the suit is on an open account, ... or ... on a conventional obligation, ... and that the necessary invoices and affidavit, or certified reproduction thereof are attached.” Further, the certification “shall indicate the type of service made on the defendant, the date of service, and the date a preliminary default was entered, and shall also include a 17certification by the clerk that the record was examined ... and a statement that no answer or other opposition has been filed.” La.Code Civ. P. art. 1702.1(B). Charges by medical providers for medical services are generally characterized as open account claims. Touro Infirmary v. American Maritime Officer, 2009-0696 (La.App. 4th Cir.1/7/10), 34 So.3d 878, 883, writ denied, 2010-0289 (La.4/9/10), 31 So.3d 395.
To prevail in a suit on open account based on coverage under an insurance poli *480 cy, the prima facie proof required includes introduction of the insurance policy into evidence. See Arias v. Stolthaven New Orleans, L.L.C., 2008-1111 (La.5/5/09), 9 So.3d 815, 823; Clark v. Clark, 2010-1281 (La.App. 3rd Cir.3/9/11), 58 So.3d 1081, 1084-87. See also Louisiana Workers’ Compensation Corp. v. Fowler, 2010-1367 (La.App. 1st Cir.2/11/11), 56 So.3d 1250, 1253, where this Court determined in a suit for collection of an unpaid premium due on an insurance policy that a certified copy of the policy of insurance, along with an invoice showing a balance due and a policy summary statement, constituted sufficient and competent evidence of the claim demanded in a confirmation-of-default judgment scenario.
Confirmation of the default is similar to a trial at which the defendant is absent. The plaintiff must present admissible and competent evidence that establishes a prima facie case, proving both the existence and the validity of the claim. Arias, 9 So.3d at 820; 1 Frank L. Maraist, Louisiana Civil Law Treatise: Civil Procedure, § 12:3, at 452-453 (2d ed.2008). Inadmissible evidence may not support a default judgment even though it was not objected to because the defendant wás not present. Arias, 9 So.3d at 820. There is a presumption that a "default judgment is supported by sufficient evidence, but this presumption may be rebutted by the record upon which the judgment is rendered. Id. Therefore, our review in this appeal is limited to determining whether North-Shore offered |8sufficient and competent evidence that Atlas was responsible for the unpaid medical services rendered to Ms. Dill on open account.

Service of Process

Initially, Atlas contends that the trial court never should have confirmed the default judgment because NorthShore failed to follow the strict mandates for service abroad pursuant to the Hague Convention, and Atlas never waived its objection to personal jurisdiction. It is well settled that citation and service must strictly comply with law to support a valid default judgment. See Mitchell v. Bass, 2001-2217 (La.App. 1st Cir.11/8/02), 835 So.2d 778, 780. In order for a default judgment to be valid, the trial court must have jurisdiction over the parties, based upon service of process on the defendant. Id. Thus, citation and service are essential in all civil actions except summary and executory proceedings; and without citation and service, all proceedings are absolutely null. La.Code Civ. P. art. 1201; Id.
NorthShore asserts that it properly requested service on Atlas by forwarding the proper forms to the Central Authority in England — the Senior Master of the High Court of Justice, Queen’s Bench Division— in accordance with the Hague Convention. NorthShore also argues that Atlas is barred from asserting insufficient service of process in this appeal because that issue has not been asserted by way of exception in the trial court and is limited to consideration in an action of nullity. However, because the trial court reviewed the sufficiency of the evidence on the service issue before confirming the default judgment, we find that service of process is properly challenged on direct appeal of this default judgment. See Mitchell, 835 So.2d at 780; Pollock v. Talco Midstream Assets, Ltd., 44,629 (La.App.2d Cir.9/23/09), 22 So.3d 1033, 1037; State, Dept. of Social Services, Office of Family Support ex. rel. T.M.A. v. Pickins, 42,721 (La.App.2d Cir.12/5/07), 972 So.2d 1225, 1229. See also Maraist, supra, at 453 (“A defendant 19may attack a default judgment in three ways: (1) by a timely motion for new trial; (2) by an appeal[;] or (3) by an action for nullity.”) (Footnotes omitted.)
*481 Service of documents abroad is precisely the type of service that triggers an application of the Hague Convention procedures. Sheets v. Yamaha Motors Corp., U.S.A., 891 F.2d 533, 537 (5th Cir. 1990). The Hague Convention specifically provides for service upon a corporation in a foreign country through a Central Authority designated to receive requests for service of judicial documents from other countries. See Articles 2 and 3 of the Hague Convention. It is the responsibility of the Central Authority to review the documents for compliance with the Hague Convention and notify the applicant with any objections to the request. See Articles 3 and 4 of the Hague Convention. If no objections are made, the Central Authority serves the documents by a method prescribed by the internal law of the receiving country and returns a certificate to the applicant stating that either the document has been served, including the method, place, date, and to whom delivery was made, or providing an explanation for why service could not be accomplished. See Articles 5 and 6 of the Hague Convention.
The record contains evidence of a certificate by the United Kingdom’s Central Authority, the Senior Courts of England and Wales, Foreign Process Section, attesting that Atlas was served with NorthShore’s petition on January 14, 2010, by first-class post at the registered address for Atlas in London. The certificate further indicates that the service was made in conformity with the Hague Convention. Several federal and out-of-state court decisions have held that the return of a completed certificate of service by a Central Authority is prima facie evidence that the service was made in compliance with Hague Convention procedures. See S.E.C. v. Internet Solutions for Business, Inc., 509 F.3d 1161, 1166 (9th Cir.2007); Floveyor Internat., Ltd. v. Superior Court, 59 Cal.App.4th 789, 795-796, 69 Cal.Rptr.2d 457, 461 (1997); Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1390 (8th Cir.1995).
Had the service on Atlas been inadequate in any material respect, the Central Authority undoubtedly would have complied with its duty to promptly inform NorthShore and specify its objections to NorthShore’s service request. By not objecting to the documents and by certifying service, the Central Authority indicated that the documents complied with the Hague Convention. See Northrup King Co., 51 F.3d at 1389-90. We decline to look beyond the certificate of service, especially since Atlas has not shown a lack of actual notice of the lawsuit or that it was prejudiced in some way. See Id. Where the record reflects that NorthShore complied with the Hague Convention, and Atlas received sufficient notice of the action as evidenced by its letters sent to North-Shore requesting to be removed from the lawsuit, we find no manifest error in the trial court’s determination that service of process on Atlas was proper in this case.

Prima Facie Proof of Insurance Coverage

In an alternative argument, Atlas maintains that the trial court erred in confirming the default judgment against it because NorthShore failed to sufficiently establish that Atlas was the insurer responsible for Ms. Dill’s medical expenses at NorthShore. Essentially, Atlas questions the sufficiency of NorthShore’s evidence presented in support of the default judgment. We find merit to this aspect of the appeal, because we do not find an actual insurance policy anywhere in the record.
With regard to insurance coverage, NorthShore submitted a poor-quality copy of a tri-fold brochure-type document with *482 an attachment labeled “Travel Insurance Validation Certificate.” While Atlas’s name and London address is printed on the brochure document as well as the validation certificate, Atlas is not specifically defined as the “insurer.” In fact, there is no specified insurer listed on |neither document. Mr. and Mrs. Dill are, however, identified as the “Insured[s].” The tri-fold document and the validation certificate each refer to “conditions and exclusions” and the validation certificate particularly asserts: “[p]lease refer to Terms and Conditions for full details of cover, conditions and exclusions.” The brochure document states that “[t]his policy is a CONTRACT OF INSURANCE. It contains details of the cover, conditions, and exclusions relating to each Insured Person and is the basis on which all claims will be settled.” The brochure also advises the holder to “PLEASE READ ... THE WHOLE OF THIS DOCUMENT CAREFULLY.” Nowhere in the brochure document or the attached validation certificate is there a section on “terms and conditions of the policy,” yet there is a declaration signed by the insured at the bottom of the validation certificate providing “I confirm that I have read the terms and conditions of the policy document and have not withheld any Material Facts that would increase the risk of making a claim.”
Obviously, what NorthShore submitted as evidence of an insurance policy that had allegedly been issued by Atlas was more akin to a declaration page from the policy and a policy coverage disclosure summary. See Clark, 58 So.3d at 1085. The validation certificate evidences a limit for medical expenses “up to 10,000,000 ([i]nclud[ing] emergency assistance services Hospitalization Benefit)” with an explicit directive to refer to the “Terms and Conditions for full details of cover, conditions and exclusions.” We find that the evidence presented is insufficient to impose liability against Atlas as an insurer. See Id. The supreme court held in Arias, 9 So.3d at 823, that the terms and conditions of an insurance policy are part of the principal basis for the claims and are “critical to establishing a prima facie case of the insurer’s liability[.]” (Italics added.) Our jurisprudence holds that when an obligation is based on a writing, prima facie proof of the obligation requires introduction of the writing into evidence. Id. at 822. | ^Furthermore, a plaintiff seeking to confirm a default must prove the existence and the validity of the claim. Id. A contract of insurance is an essential element of a plaintiffs prima facie case to confirm a default judgment against an insurance company. Id.; McIntyre v. Sussman, 2010-1281 (La.App. 4th Cir.10/26/11), 76 So.3d 1257, 1262, writs denied, 2011-2777 and 2011-2791 (La.2/17/12), 82 So.3d 290, 291.
NorthShore’s documentary evidence produced at the confirmation hearing did not constitute adequate proof under La. Code Civ. P. art. 1702 of Atlas’s liability. The brochure document and the accompanying validation certificate were deficient in that neither provided any information about the specific terms and conditions of the policy, while both expressly stated that application of the policy was limited by the terms and conditions and warned that the terms and conditions should be referred to for full “details of cover, conditions, and exclusions.” Also, there is no testimony concerning the contents of the insurance policy. Thus, it is impossible to determine the terms of the policy or Atlas’s alleged liability. See McIntyre, 76 So.3d at 1262. As in Arias, 9 So.3d at 823-824, we find that the evidence introduced to confirm the default judgment in this case was not sufficient to establish prima facie insurance coverage and liability in the absence of the admission of the insurance policy *483 itself. For this reason, we find that the trial court was manifestly erroneous in entering a default judgment against Atlas. Finding that NorthShore failed to sustain its burden of proof to confirm the default judgment against Atlas, any discussion regarding adequate proof of the amount of damages is pretermitted and does not warrant further consideration.
CONCLUSION
For the outlined reasons, we vacate the November 15, 2011 default judgment rendered and confirmed by the trial court against defendant-appellant, Atlas Travel Insurance Services Limited, d/b/a Atlas Direct, and in favor of plaintiff-appellee, |i;iTenet 100 Medical Center Slidell, L.L.C., formerly known as NorthShore Regional Medical Center, L.L.C., d/b/a NorthShore Regional Medical Center. The matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed against NorthShore.
NOVEMBER 15, 2011 FINAL JUDGMENT OF DEFAULT VACATED; CASE REMANDED.
MeCLENDON, J., concurs and assigns reasons.

. NorthShore is currently known as Tenet 100 Medical Center Slidell, L.L.C.; however, because the caption of the case in the record has not been changed to reflect NorthShore's new name, for consistency we will use the former business name.

.The 1965 Hague Service Convention is a treaty that is formally known as the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. The Hague Convention was entered into on November 15, 1965, and was effective on February 10, 1969. It was specifically intended to provide a simple way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988). The United States of America and the United Kingdom of Great Britain are among the countries who are either signatories or have ratified or acceded to the Hague Convention.

. In a separate action on August 13, 2012, this court denied NorthShore’s motion to dismiss Atlas's appeal as untimely, thereby maintaining Atlas’s appeal. Tenet 100 Medical Center Slidell, L.L.C. f/k/a NorthShore Regional Medical Center, L.L.C. v. Dill, 2012-0850 (La. App. 1st Cir.8/13/12) (unpublished).

. Our consideration of the trial court's ruling on the motion to annul in NorthShore III was rendered moot by our decision to vacate the default judgment in this appeal, NorthShore II. See NorthShore Regional Medical Center v. Dill, 2012-1400 (La.App. 1st Cir.3/22/13), 115 So.3d. 1139, 2013 WL 1195827.